**Richard M. JONES, et al.,**
**Plaintiffs-Appellants,**

v.

**The TRANSOHIO SAVINGS ASSOCIA-**
**TION, Defendant-Appellee.**

**No. 83–3490.**

United States Court of Appeals,
Sixth Circuit.

June 12, 1984.
Decided Oct. 10, 1984.

Merritt, Circuit Judge, filed concurring opinion.

Steven M. Weiss, argued, Bruner & Shafran, Cleveland, Ohio, for plaintiffs-appellants.

Brett J. Bacon, argued, Thompson, Hine & Flory, David J. Naftzinger, Cleveland, Ohio, for defendant-appellee.

Before ENGEL and MERRITT, Circuit Judges, and WEICK, Senior Circuit Judge.

WEICK, Senior Circuit Judge.

Richard M. and Donna S. Jones, on behalf of themselves and others similarly situated, Plaintiffs-Appellants, have appealed from the judgment of the United States District Court for the Northern District of Ohio, Eastern Division, dismissing their class action against The TransOhio Savings Association (TransOhio), Defendant-Appellee, filed pursuant to the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* (hereinafter, TILA).

On June 15, 1971, Appellants Richard and Donna Jones entered into a loan agreement with Appellee's assignor, The Union Savings Association, to finance the purchase of their home. On that date, the Joneses executed and delivered to Union Savings a promissory note and mortgage securing the same, and acknowledged receipt of a statement purporting to satisfy the disclosure requirements of Regulation Z, 12 C.F.R. § 226.1, *et seq.*, as promulgated by the Federal Reserve Board pursuant to TILA. Union Savings furnished to the Joneses a completed copy of the disclosure statement, but not a copy of the executed promissory note, or the mortgage securing the same. Subsequent to consummation of the transaction, the note and mortgage were assigned by Union Savings to Appellee TransOhio Savings Association.

A printed copy of the promissory note signed by Appellants is appended to our opinion as Exhibit 1. The promissory note is one page long, written in fine print difficult to read, let alone to understand, and would require someone with legal training and experience to interpret as well as to apply. Paragraph 10 of the twelve paragraph promissory note provides as follows:

The holder hereof, at any time after two (2) years from the date of this note, and from time to time thereafter, may upon not less than thirty (30) days' written notice to the undersigned, decrease or increase the interest rate then in effect by not more than one per cent (1%) per annum, provided that after receipt of such notice the undersigned may within a three (3) months' period prepay the balance then remaining unpaid without the payment of any penalty.

Furthermore, Paragraph 11 of the promissory note contains a cognovit provision by which Appellants waive issuance and service of process, and all defenses and rights of appeal, and thereby authorize confession of judgment against them. *Cf. D.H. Overmyer Co., Inc. of Ohio v. Frick Co.*, 405 U.S. 174, 188, 92 S.Ct. 775, 783, 31 L.Ed.2d 124 (1972) (similar Ohio cognovit provision).

By contrast, the disclosure statement prepared by Union Savings Association describes the annual percentage rate and monthly installment payments in fixed terms only, and does not disclose or refer to the variable interest rate feature of the note, or the impact of the variable interest rate on monthly installments. Nor does the disclosure statement refer to the cognovit provision.

On or about October 29, 1982, Appellee TransOhio Savings notified the Joneses that it was raising the loan's interest rate one per cent (1%) per annum from seven per cent (7%) to eight per cent (8%). Apparently at this time the Joneses first discovered that their disclosure statement was inaccurate and misleading. Some two weeks thereafter, on November 12, 1982, Appellants Richard and Donna Jones filed a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure in the United States District Court for the Northern District of Ohio, on behalf of themselves and an entire class of approximately fourteen hundred (1400) persons similarly situated who are the obligors on approximately seven hundred (700) mortgage notes. Jurisdiction was based on 15 U.S.C. § 1640(e), and 28 U.S.C. § 1337(a), which provide in relevant part, respectively, as follows:

(e) Any action under this section may be brought in in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.

and

(a) The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce.... 

The complaint alleged that concealment of the variable interest rate provision and the note by Appellee and its assignor was fraudulent, and was detrimentally relied upon by Appellants.[1] Relief sought included damages and a permanent injunction to prevent Appellee from raising Appellants' mortgage interest rates.

On December 9, 1982, TransOhio Savings Association filed a motion to dismiss the action pursuant to F.R.Civ.P. 12(b)(1) and 12(b)(6). In support of its motion, Appellee argued that the applicable one year statute of limitations in § 1640(e), *supra*, expired on June 14, 1972, and, therefore, that the district court lacked subject matter jurisdiction over the complaint, or in the alternative, that Appellants had stated a claim for which no relief could be granted. The district court granted Appellee's motion in a reported Memorandum of Opinion and Order dated July 1, 1983, 569 F.Supp. 1188, and it entered judgment thereon the same date dismissing the complaint. Although the district court found that the disclosure statement violated TILA and Regulation Z, *supra*, by omitting the variable interest provision, it nevertheless reluctantly concluded that dismissal of the complaint was mandated by *Wachtel v. West*, 476 F.2d 1062, 1065 (6th Cir.), *cert. denied*, 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114 (1973), in which this Court, with one judge dissenting, held that an action under 15 U.S.C. § 1640(e) for failure to make disclosures required by TILA must be brought within one year from the time when the lender and borrower originally contracted for the

extension of credit, or at the latest, from when the parties performed their contract.

On appeal, the Joneses argue that dismissal by the district court was improper because the fraudulent concealment by Appellee and its assignor alleged in their complaint tolls the statute of limitations, or because the statute of limitations should not begin to run until Appellants discovered or had a reasonable opportunity to discover the TILA violation when TransOhio Savings Association elected to raise the interest rate pursuant to Paragraph 10 of the note, *supra*. In support of the dismissal, Appellee argues that 15 U.S.C. § 1640(e) is jurisdictional and not subject to tolling, and in any event, that there was no fraudulent concealment. For the reasons hereinafter stated, we reverse.

## I.

The equitable maxim that "no man may take advantage of his own wrong," older than the country itself, is deeply rooted in our federal jurisprudence. As stated by Mr. Justice Miller in *Insurance Co. v. Wilkinson*, 80 U.S. (13 Wall.) 222, 233, 20 L.Ed. 617 (1871):

> The principle is that where one party has by his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage ... where the technical advantage thus obtained is set up and relied on to defeat the ends of justice or establish a dishonest claim.

Repeatedly throughout our judicial history, the Supreme Court has approved the application of equitable tolling to statutes of limitations to prevent unjust results in cases arising at law as well as at equity. *See Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1874) (Bankruptcy Act of 1867); *Exploration Co., Ltd. v. United States*, 247 U.S. 435, 38 S.Ct. 571, 62 L.Ed.

---

1. At oral argument, Appellee conceded that it would be bound by the fraudulent acts of its assignor, The Union Savings Association. Appellants in their complaint have alleged acts of fraudulent concealment both by Appellee and its assignor.

1200 (1918) (Act of March 3, 1891, 26 Stat. 1093, to vacate land patents); *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946) (Federal Farm Loan Act); *Glus v. Brooklyn Eastern District Terminal,* 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959) (Federal Employers' Liability Act). *Cf. Zipes v. Trans World Airlines,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (Title VII time requirement for filing charges with Equal Employment Opportunity Commission).

 In determining whether equitable tolling is appropriate, "the basic inquiry is whether congressional purposes is effectuated by tolling the statute of limitations in given circumstances." *Burnett v. New York Central R.R. Co.,* 380 U.S. 424, 427, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965). The purpose of TILA is set forth in 15 U.S.C. § 1601 as follows:

### § 1601. Congressional findings and declaration of purpose

(a) The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit ....

Thus, TILA's purpose is twofold: to facilitate the consumer's acquisition of the best credit terms available; and to protect the consumer from divergent and at times fraudulent practices stemming from the uniformed use of credit. *See Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 363, 93 S.Ct. 1652, 1657, 36 L.Ed.2d 318 (1973) (citing H.R.Rep. No. 1040, 90th Cong., 1st Sess., 13; S.Rep. No. 392, 90th Cong., 1st Sess., 1–2 (1967)).

 Appellee argues that Congress's intent to make the one year limitations period a jurisdictional prerequisite not subject to tolling is evidenced by the fact that 15 U.S.C. § 1640(e) confers jurisdiction and specifies the time for filing in the same sentence of the subsection. It is submitted that Congress never intended to facilitate fraudulent practices of lenders by making it difficult for borrowers even to assert their claims. Initially we note that TILA is a remedial statute and should be construed liberally in favor of the consumer. *See Bizier v. Globe Financial Services, Inc.,* 654 F.2d 1, 3 (1st Cir.1981); *James v. Home Construction Co. of Mobile, Inc.,* 621 F.2d 727, 729 (5th Cir.1980); *Johnson v. McCrackin-Sturman Ford, Inc.,* 527 F.2d 257, 262 (3d Cir.1975); *Eby v. Reb Realty, Inc.,* 495 F.2d 646, 650 (9th Cir.1974); *N.C. Freed Co., Inc. v. Board of Governors of Federal Reserve System,* 473 F.2d 1210, 1214 (2d Cir.), *cert. denied,* 414 U.S. 827, 94 S.Ct. 48, 38 L.Ed.2d 61 (1973). The scheme of TILA is to create a system of private attorney generals to aid its enforcement, *see McGowan v. King, Inc.,* 569 F.2d 845, 849 (5th Cir.1978), and *Bizier, supra,* at 2, and "a technical reading would be 'particularly inappropriate [where] laymen, unassisted by trained lawyers, initiate the process.'" *Zipes, supra,* 455 U.S. at 397, 102 S.Ct. at 1134 (quoting *Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972)). Furthermore, we find Appellee's structural argument unpersuasive. We note that 15 U.S.C. § 1640(e) has two functions: to confer jurisdiction by creating a private right to bring suit in the district courts and other courts of competent jurisdiction; and to define the statute of limitations by requiring that actions under § 1640 be brought within one year from the date of occurrence of the violation. *See Wachtel, supra,* at 1065; *Stevens v. Rock Springs National Bank,* 497 F.2d 307 (10th Cir.1974). But "the fact that the right and the limitation are written into the same statute does not indicate a legislative intent as to whether or when the statute of limitations should be tolled." *Burnett, supra,* 380 U.S. at 427 n. 2, 85 S.Ct. at 1054 n. 2. *See also Leake v. University of Cincinnati,* 605 F.2d 255, 259

(6th Cir.1979). *Additionally,* 15 U.S.C. § 1640(e) does not speak in specific jurisdictional terms or affirmatively grant jurisdiction to the district courts, and must be read with 28 U.S.C. § 1337, *supra,* to most accurately describe the statutory source of the jurisdictional grant.[2] *Cf. Zipes, supra,* 455 U.S. at 393–94, 102 S.Ct. at 1132–33 (similar structural analysis used under Title VII to support tolling statute); *Ruiz v. Shelby County Sheriff's Department,* 725 F.2d 388 (6th Cir.1984) (holding as subject to equitable tolling Title VII statute authorizing suit brought within 90 days of receipt of right to sue notice).

Appellee is mistaken to suggest that Congress' jurisdictional grant of power to the federal courts is so fragile as to be defeated by the intentionally fraudulent designs of those who unscrupulously would seek to avoid rightful claims to protection by the exercise of that power. Only if Congress clearly manifests its intent to limit the federal court's jurisdiction will it be precluded from addressing allegations of fraudulent concealment which by their very nature, and if true, serve to make compliance with the limitations period imposed by Congress an impossibility.

> To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure.

*Bailey v. Glover, supra,* 88 U.S. (21 Wall.) at 349. We have been shown nothing in the language or history of TILA to indicate that 15 U.S.C. § 1640(e) should be interpreted otherwise, and, therefore, we hold that the statute is subject to equitable tolling. For application of the doctrine of fraudulent concealment, the one year period will begin to run when the borrower discovers or had reasonable opportunity to discover the fraud involving the complained

of TILA violation. *Cf. Stearns v. Page,* 48 U.S. (7 How.) 819, 829, 12 L.Ed. 928 (1848). To conclude otherwise is to accede to the machinations of those who would hope to thwart Congress' purpose and the ability of the federal courts to ensure that purpose's fruition: the prevention of fraud in consumer credit transactions.

Our decision today in no way conflicts with the prior decisions of this Court. In *Wachtel, supra,* the Court addressed the narrow question under 15 U.S.C. § 1640(e) of

> ... whether a violation of the duty to disclose information to a borrower occurs at the time such disclosure is first made, or whether it is a continuing violation until such time as the disclosure is actually made.

476 F.2d at 1063. The Court, in an opinion by now Chief Judge Lively, with one judge dissenting, held that where the required disclosures are never made, the violation occurs when the loan contract for the extension of credit was first executed, or "at the latest, when the parties perform their contract." *Id.* at 1065. The applicability of equitable tolling to § 1640(e) was neither argued by the parties nor discussed by the Court as it was not an issue in the case, and we disagree with the conclusion of the district court that the decision implicitly rejected such a tolling theory.

*Rust v. Quality Car Corral, Inc.,* 614 F.2d 1118 (6th Cir.1980), is similarly distinguishable from the instant case. In *Rust,* the narrow question addressed was whether Rule 6(a) of the Federal Rules of Civil Procedure should be read into § 1640(e) to exclude the actual date of the violation from computation of the one year limitations period. Speaking for the Court, Judge Martin held that the language of § 1640(e) that the action be brought "within one year from the date of occurrence of the violation" was straightforward and precluded applicability of Rule 6(a). *Id.* at

---

**2.** In *Wachtel,* we noted that TILA does not specifically provide that federal courts have jurisdiction of actions for recission under 15 U.S.C. § 1635. 476 F.2d at 1065. This lends support to our structural analysis of the jurisdictional grant based on both 15 U.S.C. § 1640(e) and 28 U.S.C. § 1337.

1119. But as in *Wachtel*, the applicability of equitable tolling was neither argued by the parties, discussed by the Court, nor at issue in the case. Appellee points us to the language in *Rust* that "[i]f a complaint is not filed within the time period prescribed by 15 U.S.C. § 1640(e), a federal court has no jurisdiction to entertain it." *Id.* We interpret Judge Martin's remarks, however, as addressing only the jurisdiction to hear claims under TILA in the absence of allegations of fraudulent concealment meriting application of equitable tolling. *Cf. Bartholomew v. Northampton National Bank of Easton*, 584 F.2d 1288, 1297 (3d Cir.1978) (citing with approval in *Rust, supra*, at 1120) (finding no genuine issue of material fact supporting application of equitable tolling based on fraudulent concealment).

In holding that 15 U.S.C. § 1640 is subject to equitable tolling, we necessarily reject Appellants' argument that the transaction in this case should be governed by *Goldman v. First National Bank of Chicago*, 532 F.2d 10 (7th Cir.1976), and that the violation here causing the statute to run should be held to have occurred when Appellee elected to raise the mortgage interest rate. In *Goldman*, the plaintiff applied for a BankAmericard credit card from the defendant, and thereafter always paid his bill in full. More than a year passed until he was assessed his first interest charge when his monthly payment arrived late. Perceiving a discrepancy between the actual method of calculating the finance charge imposed and the method set forth in the disclosure statement, Goldman sued, alleging a violation of TILA. The district court granted defendant's motion for summary judgment based on the statute of limitations, and the Court of Appeals for the Seventh Circuit reversed. Finding it unnecessary to address Goldman's argument that the statute should be tolled by application of the doctrine of fraudulent concealment, the Seventh Circuit instead held that the limitations period should be measured from the date on which a finance charge is first imposed. 532 F.2d at 21. However, the court's holding depended upon the unique and somewhat problematic nature of open end credit arrangements involving credit cards where, unlike closed end credit arrangements in which the finance charge may be determined from the time of the first payment, determination of the TILA violation is only possible when the first finance charge appears, possibly many months after the borrower receives and initially uses the credit card. The explicit limitation of the Seventh Circuit's holding in *Goldman* to open end credit plans was recently repeated by the Seventh Circuit in *Nash v. First Financial Savings & Loan Association*, 703 F.2d 233 (7th Cir.1983).[3]

This Court has previously declined to apply *Goldman* to closed end credit arrangements, *see Rudisell v. Fifth Third Bank*, 622 F.2d 243, 247 (6th Cir.1980), and we decline to do so here. We recognize in the instant case that the variable rate loan provision contains a two year clause which would make it difficult to determine the inaccurate and misleading nature of the disclosure statement within the TILA limitations period. However, unlike the open end credit arrangement in *Goldman*, for which identification of the TILA violation is impossible without assessment of the inconsistent finance charge by the lender, in this case it was the alleged fraudulent concealment by Appellee and its assignor which prevented Appellants from discovering the TILA violation. Furthermore, under *Goldman* the imposition of the finance charge by the lender determines the date from which the statute runs, whereas our decision establishes the date on which the borrower discovers or had reasonable opportunity to discover the fraud as the point from which the limitations period is meas-

---

**3.** In *Nash*, the Seventh Circuit held that each increase in the interest rate under a mortgage loan with a variable interest rate provision constitutes a new transaction subject to the disclosure requirements of TILA and Regulation Z.

Appellants have not challenged the adequacy of the disclosures made by Appellee when it elected to raise the interest rate, and we have no opportunity, therefore, to consider this issue.

ured in cases applying equitable tolling for the doctrine of fraudulent concealment.

We also decline Appellants' invitation to apply to the facts of this case a liberal interpretation of the language in *Wachtel* that the violation occurs "when the lender and borrower contract for the extension of credit" or "at the latest, when the parties perform their contract." 476 F.2d at 1065. Appellants' suggestion that TransOhio's election to raise interest rates pursuant to Paragraph 10 of the loan agreement is the type of "performance" contemplated by *Wachtel* cannot be sustained by a fair reading of Judge Lively's opinion. Taking this "performance" argument to its logical extreme, an action for an undisclosed violation arguably could be brought so long as the borrower has made any payment on a thirty year loan within one year of the date that the action is brought, since the borrower's payment constitutes "performance" of the contract. To the contrary, it seems clear to us that the performance discussed in *Wachtel* is the actual extension of credit, when that act occurs *after* the contract regarding the extension of credit is entered into. *See* 476 F.2d at 1065. In fact, Appellants' "performance" argument is a variation of the "continuing violation" argument squarely rejected by *Wachtel* and the decisions of other courts of appeals addressing the issue. *See Stevens, supra,* at 309; *Bartholomew, supra,* at 1296; *Goldman, supra,* at 20.

To summarize, we hold that the statute of limitations for actions brought under 15 U.S.C. § 1640(e) is subject to equitable tolling in appropriate circumstances, and that for application of the doctrine of fraudulent concealment, the limitations period runs from the date on which the borrower dis-covers or had reasonable opportunity to discover the fraud involving the complained of TILA violation.

## II.

Finally, TransOhio argues that even if we hold the statute of limitations as subject to equitable tolling, application of the doctrine of fraudulent concealment is not justified by the facts of this case. In response, we remind Appellee that

> [a]t this stage of the litigation, we must accept [Appellants'] allegations as true. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.

*Hishon v. King & Spalding,* — U.S. —, —, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984), *reversing* 678 F.2d 1022 (11th Cir. 1982).

Appellants' complaint has alleged knowing and fraudulent concealment of the variable interest rate provision and of the mortgage note itself. We are unprepared to hold, prior to any discovery on the issue, that Appellants can prove no set of facts consistent with these allegations sufficient to toll the statute of limitations. Appellants are entitled to have their cause tried on the merits if they can prove that the doctrine of fraudulent concealment should be applied to their case. It is unnecessary for us to express an opinion as to the merits of any of the legal or equitable claims and defenses available to the parties.

The judgment of the district court is REVERSED, and the case is REMANDED for further proceedings not inconsistent with our opinion.

## EXHIBIT 1

### MORTGAGE LOAN PROMISSORY NOTE

$ 36,000.00 Cleveland, Ohio.........June 15,.............., 19...71.

1) The undersigned promise(s) to pay to the order of THE UNION SAVINGS ASSOCIATION of Cleveland, Ohio at any of its offices, .....THIRTY-SIX THOUSAND AND NO/100-------------------------

Dollars ($ .. 36,000.00.... .......... . ) with interest thereon at the rate of .. .. SEVEN

per cent ( 7.00 ..%) on a 360 day basis, but computed each month in advance on one-twelfth (1 12) of the actual number of days in a year

2) When and if additional sums are advanced by the holder hereof, said holder may. (1) re-schedule monthly payments to amortize the new balance within the stated maturity of this note (2) extend the maturity of the note and retain the present schedule of monthly payments (3) fix a separate rate of interest to be paid by the undersigned on the advance (4) reset the rate of interest on the principal balance of this note, including advances.

3) Principal and interest shall be payable in monthly installments of not less than . TWO HUNDRED FORTY-TWO AND NO/100------------------------------Dollars ($ 242.00 ) each beginning on September 1 , 19 71 and continuing on the same day of each month until August 1 , 2000 at which time the balance of principal and accrued interest shall become due and payable

4) If this note is made by the undersigned for the purpose of obtaining a construction or acquisition and development loan, payments of interest on the funds drawn shall be made monthly for a period not to exceed.. ..... months. Interest on the face amount of this note shall be charged after.......... months or the completion of construction, whichever shall occur first. The balance of principal and interest shall be due and payable in full.......... months from date hereof unless a schedule of monthly principal and interest payments has been completed in the preceding paragraph.

5) Each installment shall be applied first to the payment of interest and then to the principal; provided, however, that any payment may be applied at the option of the holder to the repayment of any sums advanced by the holder for payment of taxes, assessments, insurance premiums, or for keeping and maintaining the building(s) and improvements on the real estate hereinafter identified, in accordance with the terms and conditions of the mortgage deed of even date herewith given to secure this note; or the holder may require said sums so advanced to be repaid together with interest thereon at the maximum rate of interest permissible by the laws of the State of Ohio in additional to said monthly installments. If any of the aforesaid monthly installments or any sums required to be paid under the terms of the mortgage deed securing this note are not paid when due, or within fifteen (15) days thereafter, the holder hereof, at its option may charge the undersigned a "late charge", not to exceed eight per cent (8%) of each such unpaid monthly installment or sum, or the maximum rate of interest permissible by the laws of the State of Ohio on the unpaid principal of this note, to reimburse the holder hereof for the extra expense involved in handling delinquent payments.

6) Subject to the consent of the holder hereof, any amount may be prepaid upon the principal hereof and interest will be calculated on the unpaid balance as of the first day of the month in which such prepayment is accepted; provided, however, if such prepayment is accepted and the amount thereof in any calendar year exceeds twenty per cent (20%) of the original principal amount of this loan, then there shall be paid to the holder hereof a fee, in an amount equal to one hundred eighty (180) days interest on the aggregate amount of such prepayment in such calendar year, as additional compensation. Such interest shall be that rate stipulated in this note. The aforesaid monthly installments are to be made each and every calendar month irrespective of any prepayment, and the holder hereof may, without notice, apply at its option all or any part of such prepayment to the payment of said monthly installments in the event they are not made as the same become due and payable. This prepayment restriction will expire five (5) years from date hereof.*

7) Interest for the month during which any advance payment is made shall remain an obligation of the undersigned.

8) In the event of default in the payment of any of said installments, or of breach of any of the terms and conditions of this note, or of any covenant or warranty of the mortgage deed securing this note, or of any default in the performance by the undersigned of the construction loan agreement, if any, made in connection herewith, or in the event of the default of any provision of any other obligation of the undersigned to the holder hereof, whenever created, the entire amount of principal and interest then remaining unpaid, at the option of the holder hereof and without notice, shall become due and payable at once with interest thereafter at the maximum rate of interest permissible by the laws of the State of Ohio. Failure to exercise any such option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default, irrespective of whether the holder hereof exercises its option. The rate of interest shall, upon the occurrence of any default hereunder, automatically and immediately be the maximum rate of interest permissible by the laws of the State of Ohio.

9) Also, it shall be a condition of default under this note, if a receiver or trustee shall be appointed for any of the properties of the maker, or if there be more than one, any one of them, or in the event that the maker, or if there be more than one, any one of them: (1) make a general assignment for the benefit of creditors (2) file a petition in voluntary bankruptcy, or a petition or answer seeking reorganization or a readjustment of debts under the Federal Bankruptcy Law (3) be adjudged a bankrupt.

10) The holder hereof, at any time after two (2) years from the date of this note, and from time to time thereafter, may upon not less than thirty (30) days' written notice to the undersigned, decrease or increase the interest rate then in effect by not more than one per cent (1%) per annum, provided that after receipt of such notice the undersigned may within a three (3) months' period prepay the balance then remaining unpaid without the payment of any penalty.

11) The undersigned maker, and each maker or any one or more of them if there be more than one, authorizes any Attorney at Law to appear for such maker in any Court of Record in the State of Ohio, or in any other state or territory of the United States, after this note becomes due and waive the issuing and service of process and confess judgement against such maker or against such makers and any one or more of the other parties liable on this note for the amount then appearing due, together with costs of suit, and thereupon to waive all errors and all rights of appeal. The makers, if more than one, are jointly and severally liable hereon.

12) This note is secured by a first mortgage on real estate known as........................................ 3848 Skyview Drive, Brunswick, Ohio as well as any and all other security which the maker has, at any time in the past or hereafter, pledged either directly or indirectly to the holder hereof.

"WARNING — BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU OR YOUR EMPLOYER REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE."

Richard M. Jones

Donna S. Jones

PLAINTIFF'S EXHIBIT 1

MLD 13 2/71

LOAN NO. 4 2565

*Void if buyer is transferred by present employer.*

---

MERRITT, Circuit Judge, concurring.

I concur in the result reached in the opinion circulated by Judge Weick but not in its reasoning.

In this Truth-In-Lending Act case, the plaintiff borrower alleges that the defendant lender failed to disclose as required by the Truth-In-Lending Act the fact that the lender was imposing a variable rate of interest. The initial interest rate was seven percent, and the disclosure papers indicated an interest rate of seven percent without disclosing that the promissory note provided for a variable rate of interest to be

determined by the lender. Some nine years after the initial loan in 1971, the lender gave notice of an increase in the interest rate to eight percent. Within one year following this notice of increase, the borrower sued the lender claiming a Truth-In-Lending Act violation. The District Court dismissed the case on grounds that the one year statute of limitations contained in the Truth-In-Lending Act runs from the date of the initial contract on the loan, although the borrower claims that he did not have notice of the violation until after the lender went up on the interest rate. The District Court held that the statute of limitations began to run on the date of the initial loan and that the plaintiff's claim is therefore barred. The District Court purported to follow our decision in *Wachtel v. West,* 476 F.2d 1062 (6th Cir.), *cert. denied,* 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114 (1973).

I favor reversal on grounds that the statute of limitations should begin to run at the time the lender gave notice that it was increasing the interest rate. I would not rely on doctrines of equitable tolling or fraudulent concealment. The lender concedes the Truth-In-Lending Act violation, and concedes that the borrower may not have had any knowledge that the interest rate would be a variable rate rather than the seven percent rate contained in the disclosure documents. The statute should begin to run on the date the last act in the sequence of acts in violation of the Truth-In-Lending law occurred—namely, when the lender went up on the interest rate some nine years after the initial extension of credit based on an undisclosed variable interest rate. Under the circumstances of this case, no compensable wrong occurred until the interest rate was raised. Judge Lively's opinion in the *Wachtel* case does not require that the statute run from the date of the extension of credit because the opinion says that the statute would begin to run "at the latest" from the date of performance of the terms of the agreement. Under this construction, performance of the variable interest rate provision did not occur until the lender went up on the interest rate. Before that time the

lender had not gone up on the interest rate and the borrower had no knowledge that he had a problem to complain about. He would have had no damages and nothing of substance to sue for until the lender exercised the variable interest rate provision and went up from seven to eight percent.