Lucien C. STEIB, et al.

v.

ST. JAMES BANK & TRUST CO.

Civ. A. No. 85–3340.

United States District Court,
E.D. Louisiana.

Aug. 25, 1986.

Jerome J. Barbera, III, Thibodaux, La., for plaintiffs.

Michael K. Heltz, Kleibert & Heltz, Gramercy, La., for defendant.

## MEMORANDUM OPINION

MENTZ, District Judge.

By agreement among the parties, it was decided that the case would be submitted to the Court by depositions, exhibits, and stipulations.

This litigation arises out of a loan made by the defendant to the plaintiffs in May, 1983. The facts and events surrounding this loan are uncontested.

On May 6, 1983, Lucien and Denise Steib executed a collateral mortgage for $60,000 to provide for the purchase of land and the construction of a home. A promissory note was then executed in the amount of $55,-000. Of this amount, $22,700 was dispersed to purchase the lot and to pay the fee of the closing attorney. The remaining $32,300 was placed in a "Borrower's Building Fund Account". This account was, in

essence, a checking account. However, a restriction was placed on this account, in that the Steibs were required to obtain the co-signature of a bank officer, and payments could be made only to a vendor of materials or provider of services for the construction of the home.

This loan was perfected in a casual manner, the Steibs having been long-standing customers of the bank and Mr. Steib's father having served on the board of directors of the bank. The officer in charge of the loan was Mr. Garland Poche, and it is agreed that he discussed several loan options with the Steibs. In particular, the parties agree that the Steibs were offered two options for this loan:

(a) They could make a construction loan, pay interest on the amounts withdrawn as needed based upon a higher interest rate than the rate available on a permanent loan, and then convert their construction loan to a permanent loan at the end of the six month construction period at the prevailing interest rate upon completion of the construction; or

(b) A guaranteed permanent loan with a variable rate, commencing at 12.75% per annum and subject to a maximum of 14.75% per annum; with the balance of the loan proceeds to be placed in a building fund account for use in the construction and regular monthly payments to be made.

It is noteworthy that Mr. Steib is in the construction business, and indicated in his deposition that he had at least a general familiarity with the methods of financing home construction. Further, at the time the Steibs obtained their loan, interest rates were in a state of flux, and it was anticipated that the interest rate would rise.

Construction of the Steib home took well over a year to complete, due in part to the fact that Mr. Steib performed much of the labor himself, working in the evenings and on weekends. During that time, the Steibs made prompt and regular payments on the loan. The payments included interest charges on both the amount actually paid out, as well as the sums credited to the "Borrower's Building Fund Account". This account was gradually depleted until August 20, 1984, when the account was empty.

The dispute between the parties centers on whether the bank acted properly in charging interest on the funds placed in the account. The plaintiffs assert that, since these funds were not "borrowed" until withdrawn, interest could not therefore be computed on those funds remaining in the account. The plaintiffs allege that the bank, by charging this interest, committed a violation of the Federal Consumer Protection Act, Title 15, U.S.C. § 1601 et seq., as amended, and Regulation Z of the Federal Reserve Board, 12 C.F.R. 226, et seq.

These provisions require disclosure of the "finance charge", "annual percentage rate," and "amount financed" in a consumer credit transaction. The purpose of the above statutes, generally referred to as the Truth in Lending Act, is to insure that the consumer is provided with concrete and meaningful information regarding the credit activity. The Truth in Lending Act is remedial in nature, and should therefore be liberally construed. *Sellers v. Wollman,* 510 F.2d 119 (5th Cir.1975).

As the plaintiffs succinctly state in their memorandum, "(t)he issue in this case revolves around whether the amount placed in the construction loan account was actually loaned to the Steibs on May 10, 1983. If it was not, the 'amount financed' on the disclosure statement is not correct; also incorrect is the interest rate stated, since they were paying a much higher rate on the lesser amount."

The plaintiffs assert that the loan contemplated by the parties was a *Multiple Advance Construction Loan* described in Appendix D of Regulation Z, and that the bank failed to follow the disclosure requirements contained therein. The defendant denies that the loan in question here was of the type described in Appendix D, and that, in any event, the Appendix D loan is optional in the discretion of the lender.

■ After a careful reading of 12 C.F.R. 226, et seq., the Court agrees with the interpretation of these regulations made by the defendant. It is evidence that the Steibs were well aware of the nature of the loan they made with the St. James Bank. The Court concludes that all disclosures required by the Truth in Lending Act were complied with by the bank. The agreement between the parties specified that the entire sum would be made available to the Steibs at one time, and at a specified interest rate.

The funds placed in the "Borrower's Building Fund Account" was in fact a disbursement made to the Steibs. At all times it was available to the plaintiffs for their use in the construction of their home. Although it was necessary for the Steibs to obtain a bank officer's approval to issue checks from this account, this was merely to insure that the funds were being spent on construction costs. As such, this is clearly in accord with sound commercial practices and in furtherance of the protection of the manifest interest of the defendant in protecting their security interest.

To view the transaction as the plaintiffs do would have this Court believe that the bank committed itself to advance funds months, or years, down the road at the then-current interest rate. Given the 1983 climate in regards to interest rates, such an arrangement would be absurd. Rather, the Steibs borrowed the entire amount at once, and in return for having to pay interest on the funds prior to actual utilization in construction, they obtained the security of knowing that their interest rate would not increase above a certain point. Had the Steibs desired to pay interest only on the funds as they were actually advanced, then they could have selected that option ("a" above) and run the risk of a higher permanent interest rate.

Of course, it may well be that the Steibs would have been better off under the latter option, or that it would have been to their advantage to have the construction account bear interest. Had they desired a better arrangement than they received, they could have sought financing at other banks. Indeed, it is the purpose of the Truth in Lending laws to make available to consumers the information necessary to compare such alternatives. However, the Truth in Lending will not protect consumers if, having all information available, they make a poor choice.

Additionally, it is not necessary for this Court to determine compliance with Truth in Lending regulations in order for the defendant to prevail. 15 U.S.C. § 1640(e) provides that there shall be a one year period in which suit may be brought for violations of the act. This period begins to run when the violation "occurs." It is well settled that the occurrence of the violation happens when the loan is "consummated." *See*, e.g. *Bartholomew v. Northampton National Bank*, 584 F.2d 1288 (3d Cir. 1978).

The leading case on "consummation" is *Wachtel v. West*, 476 F.2d 1062 (6th Cir. 1973), wherein the Court held that " ... a credit transaction which requires disclosures under the Act is completed when the lender and borrower contract for the extension of credit.... If the disclosures are not made, this violation of the Act occurs, at the latest, when the parties perform their contract." This standard has been adopted in the Fifth Circuit as well. *See, Lawson v. Conyers Chysler, Plymouth, and Dodge Trucks, Inc.*, 600 F.2d 465 (5th Cir.1979).

■ In a closed-end credit transaction such as the one involved in the present dispute, the date of the signing of the promissory note has been held to begin the running of the one-year period. *Rudisell v. Fifth Third Bank*, 622 F.2d 243 (6th Cir.1980). Thus, in the present case, the time period began to run in May, 1983. Suit was not brought until July 31, 1985, consequently, the plaintiffs' action, if any, had prescribed.

The plaintiffs have contended, however, that the time period should not begin until all of the funds in the construction account had been utilized, citing *Goldman v. First National Bank of Chicago*, 532 F.2d 10

(7th Cir.1976). Unfortunately for the plaintiffs, this case is inapplicable to the present dispute. Not only does the cited case involve an open-ended credit transaction, but the court also held that the time period would begin to run once a finance charge had been imposed. Here, the first "finance charge" was imposed shortly after the deal was "consummated." Hence, under either test, the time period had expired long before plaintiffs filed suit.

■ There is a line of cases, however, which suggest that the one-year statutory period may be tolled for equitable reasons in certain circumstances, such as fraud. *See*, e.g., *Jones v. Trans Ohio Savings Association*, 747 F.2d 1037 (6th Cir.1984). No reason for equitable tolling has been asserted by the plaintiffs, and it would seem that none exist. Further, for determining when the period does start after tolling, the test is "the date on which the borrower discovers or had reasonable opportunity to discover the fraud involving the complained of TILA violation." *Id.* at 1043. Not only is there no fraud evident in the present transaction, but common sense dictates that the Steibs had a reasonable opportunity to discover the exact nature of their loan (assuming for the moment that they were not aware at the time the loan was made). Mrs. Steib testified that she made frequent inquiries into the status of the construction account, and had a payment book indicating the status of the loan. Certainly, the Steibs should have realized that, if in fact the account funds were not borrowed until a check was issued, their monthly payments should be increasing (or the term of the loan lengthening) as they made subsequent advances.

Therefore, it is the conclusion of the Court that, under all circumstances, the plaintiffs' Truth in Lending Act claim is time barred.

The plaintiffs have also asserted several state law claims. However, it is well settled that such state claims should be dismissed if the Federal Truth in Lending claims are found to be without merit. *Parizo v. Toyota Sales, U.S.A., Inc.*, 574 F.Supp. 138 (D.Conn.1983). *See also United Mineworkers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Accordingly, the claims of the plaintiffs are hereby DISMISSED.