The plaintiffs brought a claim for statutory damages under the federal Truth-in-Lending Act, 15 U.S.C. § 1601 et seq. The complaint alleged violation of that Act and Regulation Z, promulgated by the Board of Governors of the Federal Reserve System pursuant to § 105 of the Act, 15 U.S.C. § 1604. The Act provides for damages of twice the amount of finance charges not disclosed as required by the Act, plus attorney fees.
The trial court dismissed the complaint, and the plaintiffs appealed. We reverse and remand.
The facts are as follows: The plaintiffs, Ruby Lawson and her son, Carl Brumlow (hereinafter "consumers"), purchased two used automobiles from the defendants, Scott Reeves and Roy Limbaugh, d/b/a Rocket City Auto Sales (hereinafter "creditor").
The consumers signed a sales contract and a security agreement, reflecting a sale price for one of the cars at $1511.83 plus $63.33 sales tax, payable $500 down and the balance in two payments of $50 each and thereafter 47 weekly payments of $30 each, and a final payment of $1.83. The contract states that the finance charge is "0" and the annual percentage rate is "0%." The contract on the second car is similar.
The issue presented here is whether a cause of action has been stated under the federal Truth-in-Lending Act by allegations that finance charges were not disclosed but were included in the sale price of an item, payable over a period of time under an installment contract. The federal courts have answered this issue in the affirmative. *Page 16 
 "Finance charge" is defined by the Act: "[With certain exceptions,] the amount of the finance charge . . . shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. . . . Examples of charges which are included in the finance charge include any of the following types of charges which are applicable:
 "(1) Interest, time price differential, and any amount payable under a point, discount, or other system of additional charges.
"(2) Service or carrying charge.
"(3) Loan fee, finder's fee, or similar charge.
"(4) Fee for an investigation or credit report.
 "(5) Premium or other charge for any guarantee or insurance protecting the creditor against the obligor's default or other credit loss."
15 U.S.C. § 1605(a).
Before the consummation of the transaction, a creditor (who meets the requirements of 15 U.S.C. § 1602) is required to disclose, among other things, the financing fee charged a consumer (who meets the requirements of 15 U.S.C. § 1602) in a sales contract. 15 U.S.C. § 1638;12 C.F.R. § 226.17 and 226.18 (part of "Regulation Z"); see also,Myrick v. Finance America Credit Corp., 404 So.2d 700
(Ala.Civ.App. 1981).
The legislative history of the Truth-in-Lending Act reflects that Congress believes that economic stabilization will be enhanced, and competition among firms engaged in the extension of consumer credit will be strengthened, by the informed use of consumer credit. The informed use of credit results from consumer awareness of its cost. The purposes of the Truth-in-Lending Act are to ensure disclosure of credit terms so that the consumer will more readily be able to compare the various credit terms available, to avoid the uninformed use of credit, and to protect the consumer against unfair credit practices. 15 U.S.C. § 1601. The Truth-in-Lending Act is to be liberally construed in favor of the consumer and strictly enforced by the courts. Sellers v. Wollman,510 F.2d 119 (5th Cir. 1975), Steib v. St. James Bank TrustCo., 642 F. Supp. 910 (E.D.La. 1986).
In a case dealing with Congress's power to authorize the promulgation of Regulation Z by the Federal Reserve Board, which encompassed the "four installment rule," the United States Supreme Court, in affirming Regulation Z and the authority under which it was promulgated, acknowledged the problem of circumventing the Truth-in-Lending Act by including finance charges in the sale price of the item. The Court stated:
 "One means of circumventing the objectives of the Truth in Lending Act, as passed by Congress, was that of 'burying' the cost of credit in the price of goods sold. Thus in many credit transactions in which creditors claimed that no finance charge had been imposed, the creditor merely assumed the cost of extending credit as an expense of doing business, to be recouped as part of the price charged in the transaction. Congress was well aware, from its extensive studies, of the possibility that merchants could use such devices to evade the disclosure requirements of the Act. . . .
". . . .
 "It was against this legislative background that the Federal Reserve Board promulgated regulations governing enforcement of the Truth in Lending Act. . . .
 ". . . The Board's objective in promulgating the [four-installment] rule was to prevent the Act from fulfilling the prophecy which its opponents had forecast."
Mourning v. Family Publications Service, 411 U.S. 356,93 S.Ct. 1652, 36 L.Ed.2d 318 (1972).
We are, of course, bound by decisions of the Supreme Court of the United States construing federal statutes, and we defer to the United States Courts of Appeals' decisions which do so, particularly the decisions of the old 5th Circuit, now the 11th Circuit, into whose jurisdiction Alabama *Page 17 
falls. Therefore, we are particularly impressed with the decision of the 5th Circuit in Killings v. Jeff's Motors,Inc., 490 F.2d 865 (5th Cir. 1974). In that case, as here, the plaintiff bought a used car from the defendant. She made a down payment and signed an installment sales contract, under which she agreed to pay a certain amount each month until the balance was paid. There, as here, the contract form contained a vendor's disclosure as required by the Act, 15 U.S.C. § 1601
et seq. It reflected "none" under "finance charge." Here, the contract shows "0" under "finance charge." There, the district court found, and the court of appeals affirmed, that the transaction did contain an undisclosed finance charge in violation of § 1638. There, the parties stipulated that there was a difference of $325.28 between the "highest figure customarily charged in Alabama for similar merchandise during the relevant period." The court held that, under those circumstances, $325.28 was an undisclosed finance charge, and that the buyer was entitled to recover twice that amount plus attorney fees under § 1640(a)(2)(A)(i) and (a)(3).
The appellees argue that Killings is distinguishable because there was no stipulation in this case as to the difference between the price charged for the used cars and their actual value. That argument misses the exact point made on appeal, viz., that the trial court erred in refusing to permit the buyer to introduce evidence on that very point. Alternatively, the appellees argue that the appellant failed to preserve the issue for review. We disagree. The record shows the installment contract, whereby the price of $1511.83, after a down payment of $500, is payable in two payments of $50 each and 47 weekly payments of $30 each and a final payment of $1.83.
The record shows:
 "MR. ROWE: Judge, could we make an offer of evidence on the issue of the value of the car for the record? What we would like to show and establish through this witness [the plaintiff] and some experts is that the value was significantly less than the stated purchase price, and that price was to include —
 "THE COURT: But my question is, did somebody make her buy it for that? Did they have any discussions about that?
 "MR. ROWE: No, sir, but I think when you are talking about consumers — they are buying a package of financing and a car and they are not —
"THE COURT: I don't accept that argument."
At that point, the Court granted the appellees' motion to dismiss.
We hold that a claim for relief exists under the federal Truth-in-Lending Act, 15 U.S.C. § 1601 et seq., for non-disclosure of hidden finance charges, when the installment sales contract does not disclose an annual percentage rate, but the stated price exceeds the actual value of the item sold. The buyer is required to prove by competent evidence the difference between the actual value of the item sold and the stated sale price.
Because the trial court erred in disallowing evidence of the actual value of the items involved in this case, its judgment is reversed and the cause is remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur.