**Abina BARNES, Plaintiff,**

v.

**WEST, INC., d/b/a Brown's Arlington Honda, Defendant.**

**No. CIV.A.02–1678–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 5, 2003.

Thomas Bryan Christiano, Blankingship & Associates P.C., Alexandria, VA, for Plaintiffs.

Richard Van Wert Adams, III, Walton & Adams P.C., McLean, VA, for Defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this action, which includes a Truth in Lending Act ("TILA") claim, plaintiff alleges that defendant sold her a car as new when, in fact, the car was used and had been severely damaged. In her TILA claim, plaintiff alleges defendant misrepresented the true cost of the car loan defendant provided. This occurred, she alleges, when defendant erroneously calculated the annual percentage rate ("APR") of interest based on interest commencing on the date she made the down payment and drove the car away and not on the date, nine days later, when she signed the Retail Installment Service Contract ("RISC"). Because this action was filed more than one year after the transaction, defendant claims the benefit of the applicable one-year statute of limitations, to which plaintiff responds by claiming the benefit of equitable tolling.

At issue, therefore, on defendant's motion to dismiss are the questions (1) whether the equitable tolling doctrine applies to TILA claims and, if so, (2) whether the facts, as presented by plaintiff, warrant the application of the doctrine.

### I.[1]

In April 2001, plaintiff Abina Barnes, a Washington, D.C. resident, purchased a Honda Civic from defendant Brown's Arlington Honda, a Virginia corporation. Defendant's sales agent represented to plaintiff the car was new, and told her that the car had "water-based paint" that required special care in washing. Additionally, she was told that the vehicle should be kept in a garage so that the sunlight would not cause the paint to fade. Plaintiff states that she did not find these instructions unusual, and believed that the "water-based paint" was a new type of paint used by automobile manufacturers. On April 14, 2001, she gave defendant a $5,000 down payment, and left with the car. She returned nine days later, on April 23, 2001, and signed the RISC, which defendant backdated to April 14, 2001, the day she paid the down payment and drove the car away.

1. The facts recited here are derived from the complaint, and are assumed to be true solely for purposes of resolving the motion to dismiss. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Estate Constr. Co. v. Miller & Smith Holding Co.,* 14 F.3d 213, 217–18 (4th Cir.1994).

Within a month of this transaction, plaintiff noticed that the paint on the driver's-side door was peeling, and that paint had also come off the car when it was washed at the car wash. Indeed, a car wash employee informed plaintiff's mother, who had driven the car to the car wash, that something was amiss; factory paint should not peel or come off of a new car, and the employee advised returning the car to the dealer. Plaintiff did precisely this: she returned to the dealership, and showed one of defendant's employees where the paint had peeled or come off of the car. The defendant's employee denied that the car had any problems, explaining that because of the car's "water-based paint," it was completely normal that the paint would come off when the car was washed. This employee advised plaintiff to continue washing the car, and the problem would cease.

Thereafter, the car's paint began to peel and come off more extensively. Plaintiff again returned to the dealership. On this occasion, defendant's service manager, admitted to plaintiff that the automobile had been in a "traumatic" accident, and had, in fact, been completely repainted. But surprisingly, the service manager disputed plaintiff's assertion that she had bought the car from defendant, noting that defendant would never sell a car in that condi-

tion. Yet, even after plaintiff later presented her sales documents to defendant to prove she had bought the car there, defendant refused to take any action.[2]

Plaintiff has subsequently confirmed that the car has sustained prior accident damage, and includes a number of after-market parts, including doors, both fenders, bumpers, and aftermarket paint. To date, defendant has not offered any explanation.

On November 14, 2002, plaintiff filed an eight-count complaint, the first of which is the TILA claim.[3] Plaintiff contends that defendant's backdating of the RISC resulted in a miscalculated APR, and accordingly, higher finance charges owed by her. Defendant has filed a Rule 12(b)(6) motion to dismiss, arguing that plaintiff's TILA claim is time-barred by TILA's one-year statute of limitations. Plaintiff responds that she deserves the benefit of equitable tolling because defendant's fraudulent backdating of the RISC concealed the true APR, and prevented plaintiff from discovering defendant's TILA violation in the one-year period.

## II.

The threshold question is whether TILA's one-year statute of limitations[4] is subject to equitable tolling.[5] This question is easily answered. While there is no

---

**2.** Plaintiff also contacted the manufacturer of the car, which arranged for a representative to inspect the automobile at the dealership. This representative acknowledged the automobile's non-conformity with the manufacturer's standard new vehicle, but he, too, declined to take remedial action.

**3.** Count II alleges a violation of the Magnuson–Moss Warranty Act (MMWA), 15 U.S.C. § 2301 *et seq.* Plaintiff claims that under the MMWA, a supplier may not disclaim or modify any implied warranty if the supplier enters into a service contract with the consumer, which applies to the consumer product. Plaintiff alleges that defendant disclaimed or

modified the car's implied warranty of merchantability and fitness by selling the car to plaintiff in a defective condition.

Counts III, IV, V, and VI allege violations of the Virginia Consumer Protection Act, Va. Code § 59.1–196. Count VII alleges breach of contract, and Count VIII alleges fraud.

**4.** *See* 15 U.S.C. § 1640(e).

**5.** As the Fourth Circuit has explained, the doctrine of equitable tolling allows a plaintiff to sue after the statute of limitations has expired because she was "induced or tricked by [her] adversary's misconduct into allowing the filing deadline to pass." *Chao v. Virginia*

controlling circuit precedent,[6] "every other circuit that has considered the issue has held that TILA is subject to equitable tolling."[7] This result follows from the general rule that "[u]nless Congress states otherwise, equitable tolling should be read into every federal statute of limitations." *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir.1998) (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 395–96, 66 S.Ct. 582, 90 L.Ed. 743 (1946)); *Jones v. TransOhio Savings Ass'n*, 747 F.2d 1037, 1041 (6th Cir.1984) ("Only if Congress clearly manifests its intent to limit the federal court's jurisdiction will it be precluded from addressing allegations of fraudulent concealment. . . ."). Congress did not state otherwise with respect to TILA's one-year statute of limitations, and thus, the operation of this statute is subject to equitable tolling.

Particularly instructive and persuasive on this point are the Eleventh Circuit's *Ellis* decision and the Sixth Circuit's *Jones* decision. Both decisions emphasize TILA's remedial purpose,[8] and appropriately conclude that TILA should be construed liberally in favor of the consumer. *Jones*, 747 F.2d at 1041; *Ellis*, 160 F.3d at 707. In *Ellis*, the Eleventh Circuit reasoned that if equitable tolling did not apply to TILA, the "anomalous result" would be that a "statute designed to remediate the effects of fraud would instead reward those perpetrators who concealed their fraud long enough to time-bar their vic-

---

*Department of Transportation*, 291 F.3d 276, 283 (4th Cir.2002) (citing *Irwin v. Department of Veterans*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)).

**6.** While the Fourth Circuit has held that one section of TILA, which gives a consumer the right to rescind transactions where a security interest is retained on the consumer's principal dwelling within three business days, is not subject to equitable tolling, it characterized that section, 15 U.S.C. § 1635(f), as a statute of repose and not a statute of limitation. *See Jones v. Saxon Mortgage Inc.*, 161 F.3d 2, 1998 WL 614150, *6 (4th Cir.1998) (Table). This distinction is significant because while a statute of limitations operates to encourage the prompt resolution of disputes, a statute of repose creates a "substantive right to be free of liability after a legislatively-determined period of time." *Id.* Thus, the doctrine of equitable tolling applies to statutes of limitation because "[t]o disallow tolling when a defendant has fraudulently concealed an injury would permit a defendant to use a device, that was created out of considerations of fairness, inequitably." *Id.* By contrast, a statute of repose is "an absolute time limit beyond which liability no longer exists and is not tolled for any reason. To permit tolling of a statute of repose would upset the economic best interests of the public as a whole." *Id.*

**7.** *See Ellis*, 160 F.3d 703 (11th Cir.1998) (citing *Ramadan v. Chase Manhattan Corp.*, 156

F.3d 499 (3rd Cir.1998); *Jones v. TransOhio Savings Ass'n*, 747 F.2d 1037, 1041 (6th Cir. 1984); *King v. California*, 784 F.2d 910, 914–15 (9th Cir.1986)).

**8.** Congress articulated the purpose of TILA in 15 U.S.C. § 1601:

Congressional findings and declaration of purpose
(a) Informed use of credit
The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of consumer credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.
15 U.S.C. § 1601. The Sixth Circuit summarized TILA's purpose as follows: "to facilitate the consumer's acquisition of the best credit terms available; and to protect the consumer from divergent and at times fraudulent practices stemming from the uninformed use of credit." *Jones*, 747 F.2d at 1040.

tims' remedy. We cannot believe this was Congress' intent." *Ellis*, 160 F.3d at 708. Similarly, in *Jones*, the Sixth Circuit held that the very nature of fraudulent concealment "serve[s] to make compliance with the limitations period imposed by Congress an impossibility." *Jones*, 747 F.2d at 1041.

In sum, consistent with every circuit to address the issue, it is appropriate to apply here the rule that TILA is properly subject to equitable tolling when there has been fraudulent concealment of the plaintiff's cause of action. As the Sixth Circuit put it, "to conclude otherwise is to accede to the machinations of those who would hope to thwart Congress' purpose and the ability of the federal courts to ensure that purpose's fruition: the prevention of fraud in consumer credit transactions." *Id.*

### III.

■ The next question to address is whether plaintiff, on the facts she alleges, is entitled to the benefit of equitable tolling. As stated previously, the essence of a fraudulent concealment claim is that the plaintiff "has been induced or tricked by [her] adversary's misconduct into allowing the filing deadline to pass." *Chao v. Virginia Department of Transportation*, 291 F.3d 276, 283 (4th Cir.2002) (citing *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)). When the doctrine of fraudulent concealment is invoked, the statute of limitations period does not begin to run until

the plaintiff discovers the fraud. *See Supermarket of Marlinton Inc. v. Meadow Gold Diaries, Inc.*, 71 F.3d 119, 122 (4th Cir.1995). To invoke the doctrine of fraudulent concealment as a ground for equitable tolling, a plaintiff must demonstrate three elements: "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim; (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Id.* As one court stated succinctly, "[t]he *sine qua non* of fraudulent concealment is that the defendant fraudulently concealed from the plaintiff his cause of action during the time in which plaintiff could have brought that action."· *Cardiello v. The Money Store*, 2001 WL 604007 *4 (S.D.N.Y.2001).

■ At issue here is the first element of the Fourth Circuit's test, *i.e.*, whether the plaintiff has pled facts constituting fraudulent concealment of her TILA claim. The Fourth Circuit has clearly held, in other contexts, that to satisfy the first element of the fraudulent concealment test, a plaintiff must provide evidence of "affirmative acts of concealment" of the TILA violation by the defendants. 71 F.3d at 125 (citing *Texas v. Allan Construction Co.*, 851 F.2d 1526, 1532 (5th Cir.1988)). Significantly, although formerly unclear, it is now settled that plaintiff's proof may include acts of concealment involved in the TILA violation itself. *See id.*[9] Otherwise, the Fourth

---

9. In so holding, the Fourth Circuit explicitly rejected the two other standards employed by courts in determining whether a plaintiff has demonstrated fraudulent concealment by the defendant. While the "self-concealing" standard requires the plaintiff to proving only that a self-concealing violation has occurred, the "separate and apart" standard requires the plaintiff to provide evidence, "separate and apart from the acts of concealment involved in the defendants'...violation, that the defendants affirmatively acted to conceal the plain-

tiff's claim." *Supermarket of Marlinton*, 71 F.3d at 122. The "self-concealing" standard is "arguably proper" only when the "deception or concealment is a necessary element of the violation." *Id.* 71 F.3d at 123. By contrast, the "separate and apart" standard requires a court to undertake the "difficult, if not impossible, task of deciding which acts are in furtherance of [the violation] and which acts are separate and apart from [the violation]." *Id.* 71 F.3d at 125.

Circuit noted, considering "only those acts of concealment completed subsequent in time to the wrong" would lead to "indefensible results." *Id.* (citing *Allan Construction,* 851 F.2d at 1532).[10]

That the TILA violation itself may serve as the concealment that triggers equitable tolling is important here, as plaintiff contends that defendant's backdating of the RISC and computing the APR from that date is both the TILA violation [11] and the equitable tolling trigger.

Yet, plaintiff's reliance on the defendant's act of backdating the RISC is unavailing; that act concealed nothing from her. She knew when she signed the RISC on April 23, 2001 that it was dated April 14, 2001. What she did not know, it appears, is that the law requires the APR to be calculated from the date she became obligated, *i.e.,* the date she signed the RISC, not the date she made the down payment and drove the car away. She may also have been unaware that a backdating of a certain number of days is necessary in various circumstances to result in an APR error prohibited by TILA. But plaintiff's ignorance of these essential legal principles stems from no act of concealment by defendant, whose agents had no duty to explain the law to her, and thus cannot be said to have concealed the law from her.[12] Simply put, defendant con-

---

While the district court in *Jones v. Saxon Mortgage, Inc.* relied on another Fourth Circuit decision, *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.,* 828 F.2d 211 (4th Cir. 1987), to reach the conclusion that a TILA plaintiff claiming fraudulent concealment must demonstrate a concealing act separate from the underlying fraudulent act, the Fourth Circuit later clarified that *Pocahontas* did not in fact adopt the "separate and apart" standard. *See Supermarket of Marlinton,* 71 F.3d at 124; *Jones v. Saxon Mortgage, Inc.,* 980 F.Supp. 842, 846 (E.D.Va.1997).

**10.** As the Fifth Circuit explained in *Allan Construction,*

Through the statute of limitations Congress has chosen to confer on an accused wrongdoer the benefit of repose once the limitations period has passed. However, the equitable doctrine of fraudulent concealment recognizes that this benefit should not be available to a wrongdoer who takes undue advantage of the statute by attempting to conceal his conduct. The fact that such concealment occurs at the time of the wrong itself rather than afterwards does not make the wrongdoer any more deserving of the statute's protection.

*Allan Construction,* 851 F.2d at 1532.

**11.** Plaintiff correctly asserts that backdating the RISC can, in appropriate circumstances, violate TILA. *See Rucker v. Sheehy Alexandria, Inc.,* 228 F.Supp.2d 711, 717–718 (E.D.Va. 2002). While it is premature to consider the merits of plaintiff's TILA claim, it is worth noting, nonetheless, that the claim may fail even if not time-barred.

TILA allows for a .125% difference between the actual APR and the APR disclosed to the consumer on the RISC. *See Rucker,* 228 F.Supp.2d at 717–718 (citing 15 U.S.C. § 1606(c)). TILA also allows for a $100 difference between the actual finance charge, and the disclosed finance charge. *See* 15 U.S.C. § 1605(f)(1)(A).

In this case, according to plaintiff's counsel, the actual APR that should have been disclosed to plaintiff was 11.37%, based on an April 23, 2001 start date; the APR disclosed on the RISC was 11.25%, based on the April 14, 2001 start date. This difference is only .120%, which is within the allowable TILA tolerance. *See* 15 U.S.C. § 1606(c). Moreover, with respect to the finance charges, the actual finance charge of the first period, based on the April 23, 2001 date, was $188.04. By contrast, the finance charge disclosed to, and paid by, plaintiff for the first period was $235.05. Thus, according to plaintiff's counsel, in the first period of the loan, plaintiff paid $47.01 more than she actually owed. Had plaintiff paid her loan in accordance with the schedule provided by defendant, she would ultimately pay $79.40 more in interest than she actually owed. So assuming that plaintiff's figures are correct, this overpayment amount, $79.40, is within the $100 tolerance allowed by TILA. *See* 15 U.S.C. § 1605(f)(1)(A).

**12.** A different result might obtain had defendant's agents made affirmative misrepresenta-

cealed no facts from plaintiff and, by her own account, the delay in filing the TILA claim is attributable to her ignorance of the law,[13] not to any affirmative act of concealment by defendant. In these circumstances, equitable tolling is inapplicable. Accordingly, plaintiff's TILA claim is time-barred.

An appropriate Order will issue.

tions to plaintiff regarding the effect of the backdated RISC date.

13. Put another way, defendant concealed no facts from plaintiff that delayed the filing of the TILA claim. Once plaintiff provided her attorney with all the facts she knew, *i.e.*, the backdated RISC and the APR calculation, the attorney concluded that TILA had been violated and presumably filed the claim promptly.