**Barbara C. MILLER, Plaintiff–Appellant,**

v.

**Richard S. CURRIE; Doris Currie; Todd Hamilton Noll; Brad Towns; Health Care and Retirement Corporation of America; R. Gates; Terry Sloan; Perrysburg Township, Defendants–Appellees.**

No. 93–4378.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 27, 1995.

Decided March 22, 1995.

---

Barbara C. Miller, Huntsville, AL (argued and briefed), for plaintiff-appellant Barbara C. Miller.

Glenn E. Wasielewski (briefed), Manahan, Pietrykowski, Bamman & Delaney, Toledo, OH, John J. McHugh, III, McHugh & Schuster, Sylvania, OH, for defendants-appellees Richard S. Currie, Doris Currie.

Peter R. Casey, III (briefed), Michael W. Regnier, Eastman & Smith, Toledo, OH, for defendant-appellee Todd Hamilton Noll.

Stephen M. Dane, Janis E.S. Foley (argued and briefed), Cooper, Straub, Walinski & Cramer, Toledo, OH, for defendants-appellees Brad Towns, Health Care & Retirement Corp.

Willis P. Jones, Jr., Keith J. Watkins (briefed), Jones & Bahret Co., L.P.A., Toledo, OH, for defendants-appellees R. Gates, Terry Sloan, Patrolmen, Perrysburg Township.

Before: JONES and MILBURN, Circuit Judges; COHN, District Judge.*

COHN, District Judge.

## I.

This case arises out of alleged interference with visits by plaintiff, Barbara C. Miller (Miller), to her elderly mother, who resided at a nursing home. Miller appeals the district court's partial grant of defendants' motion to dismiss and its refusal to allow Miller to depose a witness. In her complaint, Miller alleged intentional infliction of emotional distress, defamation, interference with a family relationship, and malicious prosecution. On appeal, the issues are (1) whether the district court erred in granting defendants' motion to dismiss Miller's claim for intentional infliction of emotional distress pursuant to Federal Rules of Civil Procedure ("Fed. R.Civ.P.") 12(b)(6), (2) whether the district court erred in granting defendants' motion to dismiss Miller's claim for interference with a family relationship pursuant to Fed.R.Civ.P. 12(b)(6), and (3) whether the district court abused its discretion by denying Miller's request to depose a witness whom she alleged was publishing defamatory and slanderous statements about her.[1]

## II.

### A.

Miller is the daughter of Pearl H. Currie, a patient at the Heartland of Perrysburg (Ohio) nursing home, owned by defendant Health Care and Retirement Corporation (HCRC). Defendant Richard Currie is Miller's brother, and Doris Currie is his wife. Defendant Todd Noll is the Curries' attorney. Defendant Brad Towns is the administrator of the nursing home. Defendants R. Gates and Terry Sloan are Perrysburg police officers. Because this appeal is from the grant of a Fed.R.Civ.P. 12(b)(6) motion to dismiss, it is not necessary to review the facts as developed through discovery. Our review is confined to the sufficiency of the allegations in the complaint.

### B.

Miller filed this lawsuit on August 14, 1992, asserting four causes of action: intentional infliction of emotional distress, interference with a family relationship, defamation, and malicious prosecution. On October 1, 1992, defendants filed a joint motion to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(6), as to the claims of defamation, intentional infliction of emotional distress, and interfer-

---

* The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. This issue appears to implicate the propriety of the district court's grant of summary judgment dismissing Miller's defamation claim, as discussed below.

ence with a family relationship. Miller filed an objection to the motion on November 9, 1992, to which defendants subsequently replied.

On December 7, 1992, the district court granted defendants' motion to dismiss the claims for intentional infliction of emotional distress and interference with a family relationship but denied the motion as to the defamation claim. With regard to the claim for intentional infliction of emotional distress, the district court found that even if Miller's allegations were true, the allegations did not rise to the level of "extreme and outrageous conduct" necessary to meet the onerous standard for such claims in Ohio. J.A. 87–88. The district court dismissed the interference with a family relationship claim, finding that Ohio courts had refused to recognize a cause of action for a child's loss of parental companionship, love, association, moral support, and guidance, and that Miller's claim therefore did not exist under Ohio law.

Gates, Sloan, and Perrysburg Township filed a motion for summary judgment on the claim of malicious prosecution on December 7, 1992; the magistrate recommended that the motion be granted on April 13, 1993. Towns and HCRC filed a similar motion on both the malicious prosecution and the defamation claims on January 27, 1993; the magistrate recommended that the motion be granted on April 13, 1993. Noll also moved for summary judgment, on March 9, 1993, on the claims of malicious prosecution and defamation; on July 22, 1993, the magistrate recommended that his motion be granted. Finally, Richard and Doris Currie filed a motion for summary judgment on the remaining claims on April 19, 1993; thereafter, on September 29, 1993, the magistrate recommended that their motion be granted.

In the meantime, on January 19, 1993, Miller attempted to secure access to the nursing home records pertaining to her mother. HCRC objected to Miller's discovery request on February 9, 1993. Subsequently, on April 30, 1993, Miller served a subpoena duces tecum on her mother, requiring her mother to submit to a deposition and bring with her all of her nursing home records. In response, Noll filed his own affida-

vit along with a motion for a protective order claiming that Miller's mother did not wish to be deposed or to produce her records. Miller objected to Noll's representation of her mother, alleging that he faced a conflict of interest in representing her mother while at the same time defending himself in the action at issue. Miller's mother was then ninety-eight years old.

On May 18, 1993, the district court quashed Miller's subpoena without prejudice to her ability to renew her motion. Noll's motion for a protective order was dismissed on June 3, 1993. The district court ordered HCRC's attorney to search the nursing home records for any information pertaining to Miller, but only a nurse's note was eventually produced. Miller filed a motion for reconsideration of her deposition request on June 15, 1993, two weeks after the already-extended discovery deadline had passed. The district court denied the motion on July 9, 1993, without prejudice to a renewal that was specific as to the deposition topics and their relevance to the subject matter of the litigation.

On November 15, 1993, the district court judge issued a memorandum opinion and order adopting the recommendations of the magistrate that each of defendants' motions for summary judgment be granted, thereby dismissing the case. This timely appeal followed.

### III.

#### A.

Miller argues that the district court erred in granting defendants' motion to dismiss the claim of intentional infliction of emotional distress pursuant to Fed.R.Civ.P. 12(b)(6). In dismissing the claim, the district court found that even if Miller could prove all of her allegations about defendants' conduct, the actions did not rise to the level of "extreme and outrageous" behavior required to successfully assert an intentional infliction of emotional distress claim in Ohio. J.A. 87–88. Miller argues, though, that her complaint included allegations sufficient to establish every element of her claim and that the question of whether defendants' actions were ex-

treme and outrageous should have been a question for the jury.

■■■ Whether the district court properly granted defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is a question of law that we review de novo. *Mertik v. Blalock*, 983 F.2d 1353, 1356 (6th Cir.1993) (citing *Dugan v. Brooks*, 818 F.2d 513, 516 (6th Cir.1987)). On a Fed.R.Civ.P. 12(b)(6) motion, all of the allegations contained in the plaintiff's complaint are accepted as true, and the complaint is construed liberally in favor of the party opposing the motion. *Mertik*, 983 F.2d at 1356; *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). In *Scheuer v. Rhodes*, the Supreme Court explained:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence ... its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.

*Scheuer*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). It is not the function of the court to weigh evidence or evaluate the credibility of witnesses, *Cameron v. Seitz*, 38 F.3d 264, 270 (6th Cir.1994); instead, the court should deny the motion unless it is clear that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Cameron*, 38 F.3d at 270 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

■■■ Because this action comes to us as a diversity action, we must apply Ohio law in determining if Miller's allegations are sufficient. The Ohio Supreme Court recognized the tort of intentional infliction of emotional distress in *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 6 Ohio St.3d 369, 453 N.E.2d 666 (1983). In *Yeager*, the court articulated the requirements for a successful claim, saying that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if

bodily harm to the other results from it, for such bodily harm." *Yeager*, 453 N.E.2d at 671. Thus, in order to state a claim for intentional infliction of emotional distress in Ohio, a plaintiff must allege that (1) defendants intended to cause emotional distress, or knew or should have known that their actions would result in plaintiff's serious emotional distress, (2) defendants' conduct was extreme and outrageous, (3) defendants' actions proximately caused plaintiff's emotional injury, and (4) plaintiff suffered serious emotional anguish. *Hanly v. Riverside Methodist Hosps.*, 78 Ohio App.3d 73, 603 N.E.2d 1126, 1132 (1991) (citing *Pyle v. Pyle*, 11 Ohio App.3d 31, 463 N.E.2d 98, 103 (1983)).

Miller bases her claim for intentional infliction of emotional distress on the actions of Richard and Doris Currie, Noll, HCRC, and Towns, whom she alleges were all involved in hiding her mother from her, preventing her from visiting with her mother, and causing her arrest on charges of criminal trespass. She says her assertions that these actions were taken "deliberate[ly], intentional[ly], malicious[ly] and with reckless disregard for the feelings of either the plaintiff or her mother," J.A. 20, sufficiently addressed every element required to make out a claim of intentional infliction of emotional distress.

Defendants dispute the sufficiency of Miller's allegations that she suffered serious emotional distress and that defendants' conduct was extreme or outrageous. Miller says the district court erred in finding that, as a matter of law, her allegations did not demonstrate extreme and outrageous behavior by defendants. She argues that the district court's finding involved the substitution of the court's personal, subjective viewpoint for the liberal, objective consideration required by Fed.R.Civ.P. 12(b)(6).

■■■ To the extent that Miller suggests a district court judge cannot rule that, as a matter of law, certain conduct does not rise (or sink) to the extreme and outrageous level required to state a claim for intentional infliction of emotional distress, she attempts to prove too much. It is well accepted that intentional infliction of emotional distress

claims may entirely appropriately be dealt with on summary judgment or in a motion to dismiss. *See, e.g., Rogers v. Targot Telemarketing Servs.*, 70 Ohio App.3d 689, 591 N.E.2d 1332, 1333, 1336 (1990) (treating plaintiff's allegations that she was falsely promised continued employment with the intention of causing her to detrimentally rely on the assurances as insufficient to qualify as extreme or outrageous); *Baab v. AMR Serv. Corp.*, 811 F.Supp. 1246, 1270 (N.D.Ohio 1993) (stating that co-workers' display of photographs of scantily clad women and plaintiff's receipt of pornographic "sex toys" was not intolerable in a civilized society and therefore not extreme or outrageous).

■ Nevertheless, we find that in the particular circumstances of this case, the district court erred in dismissing under Fed.R.Civ.P. 12(b)(6) Miller's claim for intentional infliction of emotional distress. The complaint alleged that on three separate occasions defendants intentionally and maliciously hid her mother when Miller came to visit her, and on one occasion caused her to be arrested when she came to visit her mother. While the circumstances surrounding the events at the nursing home are, naturally, not all laid out in the complaint, we do not agree with the district court that Miller could not conceivably prove any set of facts in support of her allegations that would entitle her to relief. It is certainly within the realm of imagination that hiding a ninety-eight year old, physically infirm mother from her adult daughter, and causing the daughter to be arrested for attempting to visit her mother, could under some set of facts constitute "extreme and outrageous" conduct, and present a case "in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Yeager*, 453 N.E.2d at 671 (quoting Restatement of the Law 2d, Torts (1965) 71, Section 46, comment d).

In terms of emotional distress, the complaint alleges that "defendants' actions caused [Miller] to suffer severe emotional distress as well as physical injuries and nightmares." While this allegation is rather barebones, it is sufficient in the context of this case to fulfill the requirement of alleging serious emotional distress. The Ohio Supreme Court has described "serious" emotional distress as involving an

> emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.

*Paugh v. Hanks*, 6 Ohio St.3d 72, 451 N.E.2d 759, 761 (1983). Here, Miller specifically alleged that the emotional distress she suffered was "severe," and that she suffered physically as a result. One cannot say from the face of the complaint that this is merely a case "where some one's feelings are hurt." *Yeager*, 453 N.E.2d at 671. The allegation is sufficient to survive a Fed.R.Civ.P. 12(b)(6) motion to dismiss.

Because it is conceivable that a set of facts could be proved in support of the complaint's allegations under which Miller would be entitled to relief for intentional infliction of emotional distress, the claim should not have been dismissed under Fed.R.Civ.P. 12(b)(6). This decision should not be construed as suggesting that Miller ultimately will succeed in proving such a set of facts, only as holding that her pleading is not so deficient that she should be denied the opportunity to present her evidence. Defendants remain free to move for summary judgment under Fed. R.Civ.P. 56 once Miller has submitted her evidence in support of her allegations, to test whether she has succeeded in establishing a set of facts entitling her to relief.

**B.**

■ Miller also argues that the district court erred in granting defendants' motion to dismiss the claim of interference with a family relationship pursuant to Fed.R.Civ.P. 12(b)(6). Miller asserts that the authority on which the district court relied in its memorandum and order dismissing her claim has been overruled by a case decided since the district court granted dismissal. In reviewing the dismissal of the claim, we will uphold the dismissal if it is clear that Miller could prove no set of facts in support of her claim

that would entitle her to relief. *Cameron v. Seitz,* 38 F.3d 264, 270 (6th Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Again, all of the allegations contained in the complaint are accepted as true, and the complaint is construed liberally in favor of plaintiff. *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976).

Miller's claim of interference with a family relationship is a claim for her "loss of her mother's love, companionship, society, instruction, guidance and consortium" as well as her loss of inheritance. J.A. 22. Miller alleges that Richard and Doris Currie, Noll, and HCRC acted in concert to interfere with her visits with her mother by disturbing the visits, removing Miller's mother from her room and hiding her from Miller, and stationing an aide to remain with Miller's mother through the duration of her visits. Miller also alleges that her mother never received mail and packages forwarded to her from Miller and that Miller's telephone calls to her mother were either refused entirely or made unpleasant for her mother because of the conditions under which she was made to take the calls. Miller claims that the interference has adversely affected her reputation and caused her emotional distress.

The courts in Ohio have not recognized a cause of action allowing an adult child to recover for the loss of a parent's consortium. *See Gallimore v. Children's Hosp. Medical Ctr.,* 67 Ohio St.3d 244, 617 N.E.2d 1052, 1054 (1993) (explaining that a claim for loss of consortium encompasses a claim for loss of "services, society, companionship, comfort, love and solace"). The district court based its decision to dismiss on *High v. Howard,* 64 Ohio St.3d 82, 592 N.E.2d 818, 819 (1992), *overruled, Gallimore v. Children's Hosp. Medical Ctr.,* 67 Ohio St.3d 244, 617 N.E.2d 1052 (1993), in which the Ohio Supreme Court found that "[a] child's claim for loss of companionship, love, association, moral support, and guidance ... rests upon a moral obligation, not an obligation enforceable at law." The decision in *High* followed prior holdings of the court that there is neither a statutory nor a common law basis for a child's claim of loss of parental consortium.

*Kane v. Quigley,* 1 Ohio St.2d 1, 203 N.E.2d 338, 340 (1964). *See also Gleitz v. Gleitz,* 88 Ohio App. 337, 98 N.E.2d 74, 74 (1951) (conceding that there is no statutory or common law basis for a claim of loss of parental consortium).

In *Gallimore,* the Ohio Supreme Court recognized a minor child's right to recover for the loss of parental consortium due to physical injuries to the parent caused by a third party tortfeasor. *Gallimore,* 617 N.E.2d at 1055. We find that *Gallimore* is not applicable here. As an initial matter, *Gallimore* specifically states that it is to be applied only prospectively. *Gallimore,* 617 N.E.2d at 1060. *Gallimore* was decided on September 15, 1993. The district court entered an order dismissing the claim for interference with a family relationship on December 7, 1992, making Miller's reliance on *Gallimore* misplaced.

Even if we were to apply *Gallimore,* we do not find that it necessitates reversal of the district court's decision. *Gallimore* specifically addressed the right to recover for loss of consortium stemming from physical injuries. *Gallimore,* 617 N.E.2d at 1055. Miller has not asserted any physical injuries in her claim of interference but instead asserts mental distress and loss of inheritance. Furthermore, the court's holding was explicit: "We overrule *High* and hold that, in Ohio, a *minor* child has a cause of action against a third-party tortfeasor who negligently or intentionally causes physical injury to the child's parent." *Gallimore,* 617 N.E.2d at 1060 (emphasis added). Miller, the child in this case, is obviously not a minor.

Finally, we note that Miller seeks recovery for the injuries defendants' actions have caused her, not for injuries to her mother. Miller's only reference to injuries sustained by her mother is not a claim of physical injury but a claim that defendants' interference with her contacts with her mother has caused "[Miller] and her mother to be emotionally upset and disturbed...." J.A. 22. Moreover, the recovery Miller seeks is geared to remedy her own losses. *Gallimore* allows recovery against a third-party tortfeasor for injuries to a child's parent, *id.* at 1060, and is not applicable to Miller's request

for relief for injuries she has suffered. Therefore, we find that Miller's cause of action has not been recognized in Ohio and that she could not state any set of facts that would entitle her to relief for defendants' alleged interference with a family relationship.

### C.

■ Finally, Miller argues that the district court erred in quashing the subpoena duces tecum she served on her mother in order to determine from her mother and her mother's records the source of the defamatory statements at issue. Because Miller subpoenaed her mother only in connection with her defamation claim, the propriety of quashing the subpoena duces tecum is moot.

On November 15, 1993, the district court issued a memorandum opinion and order adopting the magistrate judge's recommendations that defendants' motions for summary judgment be granted, thereby dismissing Miller's defamation claim. Because Miller never filed specific objections to the magistrate judge's reports recommending that summary judgment be granted, she has waived her right to review of the grant of summary judgment.

■ Northern District of Ohio Local Rule 5:3.1(b) provides that a party must file specific objections to a magistrate's report and recommendation within ten days of service. As long as a party was properly informed of the consequences of failing to object, the party waives subsequent review by the district court and appeal to this court if it fails to file an objection. *See United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981); *see also Thomas v. Arn*, 474 U.S. 140, 147–50, 106 S.Ct. 466, 470–72, 88 L.Ed.2d 435 (1985) (affirming appellate court's holding that failure to file an objection to the magistrate's report constitutes a waiver). Local Rule 5:3.1(b) also requires that the objection identify the portions of the magistrate's recommendation to which objection is made and the basis for the objection. In *Howard v. Secretary of Health and Human Servs.*, 932

F.2d 505, 508–09 (6th Cir.1991), we held that a general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious. *Howard*, 932 F.2d at 509.

The magistrate judge filed his recommendations that summary judgment be awarded to defendants on April 13, 1993, July 22, 1993, and September 29, 1993. Each time, Miller received notice that the magistrate's report and recommendation had been filed. The notices specifically warned Miller that she had ten days to file objections and that in the event she failed to file such objections, she had waived her right to appeal.

In its memorandum opinion, the district court thoroughly reviewed Miller's objections to the magistrate's reports and recommendations, concluding that in each case plaintiff had failed to satisfy the *Walters* mandate and Local Rule 5:3.1(b). Plaintiff's objections to the recommendations relating to Towns and HCRC and to Noll were summary in nature, with no specificity at all. Plaintiff's objections to the recommendations relating to Gates, Sloan and Perrysburg Township failed specifically to address the findings of the magistrate. Her objections disputed the correctness of the magistrate's recommendation but failed to specify the findings that she believed were in error. Finally, in Miller's objection to the magistrate's recommendation that summary judgment be granted to Richard and Doris Currie, plaintiff simply objected to the report and recommendation and referred to several of the issues in the case. We agree with the district court's well-reasoned conclusion that Miller filed what amount to general objections to the magistrate's reports and recommendations and that she waived appeal of the district court's grant of summary judgment on her claims of defamation and malicious prosecution. *See Ivey v. Wilson*, 832 F.2d 950, 957 (6th Cir. 1987). Because the grant of summary judgment may not be reviewed, the discovery issue Miller raises here is moot.[2]

---

2. As Miller's mother is now deceased, any issues as to her availability for deposition in connection with the intentional infliction of emotional distress claim are also moot.

## IV.

For the reasons stated, the district court's dismissal of the intentional infliction of emotional distress claim is **REVERSED**, and its dismissal of the interference with a family relationship claim and denial of Miller's request to depose her mother are **AFFIRMED**.

The case is **REMANDED** for further proceedings in accordance with this opinion.