**Bobbie CARR, Plaintiff,**

v.

**HOME TECH CO, INC., et al., Defendants.**

No. 03–2569.

United States District Court, W.D. Tennessee, Western Division.

March 6, 2007.

Sapna V. Raj, Webb A. Brewer, Memphis Area Legal Services, Inc., Memphis, TN, for Plaintiff.

Bruce E. Alexander, Mitchel H. Kider, Weiner Brodsky Sidman Kider, P.C., Washington, DC, Jennifer Shorb Hager-

man, Roscoe Porter Feild, Burch Porter & Johnson, Christopher S. Campbell, John L. Ryder, Harris Shelton Dunlap Cobb & Ryder, John S. Golwen, Kristen C. Wright, Mary Katherine Hovious, Bass Berry & Sims PLC, Virginia Patterson Bozeman, W. Timothy Hayes, Jr., The Hardison Law Firm, Memphis, TN, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART THE MOTION OF EQUITY TITLE AND ESCROW CO. OF MEMPHIS, LLC, AND STEVEN WINKEL TO DISMISS

DONALD, District Judge.

Before the Court is the motion (D.E.# 143) of Equity Title and Escrow Company of Memphis, LLC ("Equity Title") and Steven Winkel (collectively "Defendants") to dismiss the complaint of Plaintiff Bobbie Carr pursuant to Fed. R.Civ.P. 12(b)(6). Plaintiff asserts that Defendants violated 1) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq.; 2) the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, et seq.; 3) the Truth–in–Lending Act ("TILA"), 15 U.S.C. § 1601, et seq.; 4) the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, et seq.; 5) the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, et seq.; and 6) the Tennessee Consumer Protection Act ("TCPA"), Tenn.Code Ann. § 47–18–101, et seq. Plaintiff additionally asserts state law claims for fraud, conversion, negligent misrepresentation, breach of fiduciary duty, breach of contract, conspiracy, and unconscionability. Defendants contend that the complaint should be dismissed as to them because Plaintiff has failed to state an actionable claim against them. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. For the reasons stated herein, the Court grants in part and denies in part Defendants' motion to dismiss.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) enables a defendant to file a motion to dismiss for a plaintiff's failure to state a claim upon which relief can be granted. Motions to dismiss under Fed.R.Civ.P. 12(b)(6) are designed to test "whether a cognizable claim has been pleaded in the complaint." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988). Dismissal under Fed.R.Civ.P. 12(b)(6) is appropriate when no set of facts exists which would entitle the plaintiff to recover. *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir.1989). Essentially, it allows the court to dismiss meritless cases which would otherwise waste judicial resources and result in unnecessary discovery. *See, e.g., Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

In reviewing a defendant's Rule 12(b)(6) motion to dismiss, a district court should construe the complaint in the light most favorable to the plaintiff and determine whether the plaintiff undoubtedly can prove no set of facts in support of her claims that would entitle her to relief. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir.1990), *cert. denied*, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990). If an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1039–40 (6th Cir.1991).

A district court may not grant a defendant's Fed.R.Civ.P. 12(b)(6) motion to dismiss based on its disbelief of the plaintiff's factual allegations. *In Re Sofamor Danek Group, Inc.*, 123 F.3d 394 (6th Cir.1997), *cert. denied, Murphy v. Sofamor Danek Group*, 523 U.S. 1106, 118 S.Ct. 1675, 140 L.Ed.2d 813 (1998). It is not the court's function to weigh evidence or evaluate the credibility of witnesses. *Miller v. Currie,*

50 F.3d 373, 377 (6th Cir.1995). A court will not consider any disputed questions of fact at this stage. *Barnes v. Winchell,* 105 F.3d 1111, 1114 (6th Cir.1997). Rather, the court should accept all well-pleaded facts as true and not consider matters outside the pleadings. *Hammond,* 866 F.2d at 175.

The United States Supreme Court has held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Neitzke,* 490 U.S. at 326–27, 109 S.Ct. 1827; *Lewis,* 135 F.3d at 405 (6th Cir.1998). Thus, the standard to be applied when evaluating a motion to dismiss for failure to state a claim is very liberal in favor of the party opposing the motion. *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). Even if the plaintiff's chances of success are remote or unlikely, a motion to dismiss should be denied. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## II. FACTUAL ALLEGATIONS[1]

Plaintiff Bobbie Carr, an African American woman, sixty-seven years old at the time her complaint was filed, asserts that Equity Title and Steven Winkel, together with the remaining defendants in this case, engaged in predatory lending practices as part of a scheme in which the defendants acted in concert to lure unsuspecting and unsophisticated African–American homeowners into exploitative mortgage loans for the purposes of consolidating debt and/or financing home repairs or home improvements.[2]

In January 2002, Ms. Carr contacted Home Tech Services Co. ("Home Tech") to inquire about repairs to her kitchen. (Second Am. Compl. ¶ 17.) Home Tech advised her to contact Memphis Financial Services, Inc. ("MFS") to obtain a loan for the repairs. *Id.* On February 13, 2002, Ms. Carr met with Sandra Wells, a Memphis Financial Services representative, to discuss the loan. *Id.* ¶ 19. During the meeting, Ms. Carr informed Ms. Wells that she could afford monthly payments of $400. *Id.* ¶ 21. Also during this exchange, Ms. Wells persuaded Ms. Carr to enroll in a service provided by Economic Advantages Corporation ("EA") which would deduct payments from her account biweekly instead of monthly. *Id.* ¶ 20.

After the meeting, a Home Tech salesman told Ms. Carr that Home Tech could complete the repairs for $5,000. On February 20, 2002, Ms. Wells called to inform Ms. Carr that the loan papers had been completed and that she should come to Home Tech to complete the closing. When Ms. Carr arrived for the closing later that day, a Home Tech representative, Nina Townes, attempted to conceal the information on Plaintiff's loan papers and simply told Ms. Carr where to sign, repeating "sign here, and sign here." *Id.* ¶ 25. Ms. Carr did not feel comfortable with the process and refused to complete the closing. *Id.* After Ms. Carr left, Ms. Wells called and convinced her to return to Home Tech to complete the process. *Id.* ¶ 26. This time, Ms. Wells distracted Ms. Carr with conversation and again stated "sign here, sign here" without explaining the documents. *Id.* At no time during the closing did Ms. Carr receive disclosure of

---

**1.** The factual allegations are taken from the complaint and are presumed to be true for purposes of the instant motion only.

**2.** Plaintiff's complaint includes claims for violations of RICO and for conspiracy. Accord-

ingly, the factual allegations made in the complaint concerning all the defendants must be examined in order to analyze Equity Title and Winkel's arguments in support of their motion to dismiss.

any credit terms or a good faith estimate of closing costs. Nor did Ms. Carr receive any copies of her notice of right to rescind. *Id.* ¶ 36. Ms. Carr was left with the understanding that once she signed the papers she could not rescind the transaction. *Id.* ¶ 40.

Ms. Carr began the loan process to fund kitchen repairs for her home estimated at $5,000. However, after credit card consolidations suggested by Ms. Wells and closing costs were added, Ms. Carr's promissory note totaled $51,000. Memphis Financial Services agreed to use funds from the loan to pay insurance, property taxes, and Plaintiff's credit card bills. However, Ms. Carr's credit card bills were not paid off. *Id.* ¶ 28. Moreover, although Ms. Carr informed Home Tech that she could only afford monthly payments of $400, when the loan was finalized Memphis Financial Services disclosed that her payments would be $507 while the Federal Truth in Lending Disclosure Sheet stated that her monthly payments were only $447.18. Furthermore, after closing Ms. Wells informed Ms. Carr that because of the fees and payments to creditors, there would not be enough money to complete repairs to her home.

In addition to failing to provide funds for the repairs, there were multiple procedural irregularities in Ms. Carr's loan transaction. For instance, the Settlement Statement Plaintiff received was not signed by any representative of her settlement agent, Equity Title. Moreover, although the Deed of Trust states it was notarized by Stephen Winkel, none of the closing documents were notarized in Ms. Carr's presence and she never met Mr. Winkel. *Id.* ¶¶ 33, 34. Furthermore, Ms.

Carr alleges that the listed appraiser, Gregg Drew did not conduct a proper appraisal, but simply agreed with Memphis Financial Services on a value to be attached to her property. *Id.* ¶ 54. Ms. Carr also alleges that the primary lender, NovaStar, did not practice due diligence in reviewing the loan request or considering ability to repay. *Id.* ¶¶ 46, 53.

On August 1, 2003, Ms. Carr filed the instant predatory lending action against Equity Title, Mr. Winkel, and other participants in her loan transaction including Home Tech and Memphis Financial Services. On July 8, 2004, Equity Title and Mr. Winkel, who is one of the principle owners and operators of Equity Title, filed this joint motion to dismiss Ms. Carr's complaint.

### III. ANALYSIS

Defendants assert generally that the claims against them should be dismissed because they had no involvement in the wrongdoing alleged in the complaint. Defendants offer specific arguments to support the dismissal of each claim. The Court will address each claim individually.[3]

#### A. *RICO Claims*

In this Court's February 7, 2006 order in the present case (D.E.# 422) on the motion to dismiss of Novastar Mortgage, Inc., the Court found that the complaint had sufficiently alleged the predicate offenses of mail fraud and wire fraud. The Court further found that Plaintiff had alleged a pattern of racketeering activity adequate to fulfill the requirement of an "association-in-fact enterprise." From these findings the Court concluded that Plaintiff had made a cognizable claim un-

---

**3.** Many of the legal issues raised by the present motion have been decided in the Court's previous rulings in this case on other defendants' motions to dismiss. In the interest of economy, the Court will summarize its past findings, where relevant, as a point of departure for discussing those issues unique to Defendants' present motion.

der RICO. Although these findings were made in the context of a motion by another defendant, they pertain to the alleged enterprise as a whole and apply equally to all participants, including the moving Defendants.

Defendants argue, however, that even if a RICO enterprise existed, Plaintiff has not sufficiently alleged the participation of these Defendants in the enterprise as required under 18 U.S.C. § 1962(c). (Mem. Supp. Mot. Def.'s Dismiss Pl.'s Am. Compl. 11.) Defendants assert that they did not solicit the plaintiff for a loan, did not close the loan, did not co-ordinate the loan or have anything to do with the manner in which the loan was to be made, did not benefit from the features of the loan, did not make any representation to the plaintiff, and never met or had any contact with Plaintiff. *Id.* at 3. In essence, Defendants argue that Equity Title was a neutral third-party, neither participating in nor benefiting from the allegedly fraudulent conduct of the other defendants.

This Court has heard similar arguments in other predatory lending cases in which Equity Title was named a defendant. In *Echols v. Equity Title & Escrow*, the defendants asserted that the complaint against them contained no indication of how they "conducted" or "participated" in the affairs of the enterprise. Case No. 01–2033, Order on Defs.' Mot. to Dismiss, 30 (W.D.Tenn. August 29, 2001). The Court quoted from *Reves v. Ernst & Young*, 507 U.S. 170, 179, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993) the proposition that "in order to participate, directly or indirectly, in the conduct of such enterprise's affairs, one must have some part in directing those affairs." *Id.* (internal quotations omitted). The Court "distinguished between cases involving outsiders, who allegedly participate in an enterprise's affairs by providing advice or services ... and cases involving

'association-in-fact' enterprises, where the individuals or entities providing the services constitute the RICO enterprise." *Id.* (citing *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 n. 3 (7th Cir.1998) (emphasizing that the alleged enterprise was not an association-in-fact and that particular defendants were not alleged to be part of the enterprise but were "best characterized as contractors hired by the enterprise to perform specific tasks")); *MCM Partners, Inc. v. Andrews–Bartlett & Assocs., Inc.*, 62 F.3d 967, 978–79 (7th Cir.1995) (holding that while defendants were "lower rung participants who are under the direction of upper management" and noting that "[t]he primary fact leading us to this conclusion is the nature of the 'enterprise' [plaintiff] has depicted, as both [defendants] are alleged to be members of an 'association-in-fact' constituting the RICO enterprise") (quoting *Reves*, 507 U.S. at 184, 113 S.Ct. 1163).

The complaint in *Echols*, like the instant action, alleged an association-in-fact enterprise, wherein certain defendants, "acting on behalf of the enterprise of which they were members, committed acts of fraud when they prepared the closing documents and settlement statements." *Echols*, Case No. 01–2033 at 30. The Court determined that the defendants' "alleged actions [were] not analogous to outsiders who perform services, albeit with knowledge of illegality, for an enterprise of which they are not members." *Id.* at 31–32.

In accordance with its findings in *Echols*, the Court concludes that in the present case, Plaintiff has provided sufficient factual allegations from which the finder of fact could infer that Equity Title and its agents conducted or participated in, either directly or indirectly, the enterprise's activities. Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's § 1962(c) claim.

### A. *Section 1962(d) (RICO Conspiracy)*

■ Plaintiff claims that Defendants have conspired to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d). In support of her claim, Plaintiff alleges that the facts she presents in the complaint demonstrate the existence of an agreement among the defendants to maintain an interest in or control of an enterprise or to participate in the affairs of the enterprise through a pattern of racketeering activity.

Defendants argue that Plaintiff has failed to sufficiently allege the existence of a conspiracy to violate § 1962(c) because "the underlying substantive claims are deficient." (Mem. Supp. Mot. Def.'s Dismiss Pl.'s Am. Compl. 11.) Having found that the underlying claims are not "deficient" in the foregoing section, the Court accordingly finds Defendants' argument unavailing.

The complaint provides little detail regarding the alleged conspiracy. Nonetheless, the complaint, viewed in its entirety, presents sufficient factual allegations to inform Defendants of the alleged conspiracy's members, its goals, and the various defendants' roles in it. Furthermore, it contains direct or inferential allegations that the defendants formed an enterprise and agreed that one or more of them would take criminal actions to further their alleged predatory lending scheme. Accordingly, Defendants' motion to dismiss Plaintiff's conspiracy claims under 18 U.S.C. § 1962(d) is denied.

### B. *Civil Conspiracy*

Plaintiff alleges that all defendants agreed by and between each other to engage in a scheme to obtain money from Plaintiff and other consumers. *Id.* ¶ 86. Specifically, she alleges that Defendants engaged in overt acts of fraudulent lending and mail fraud and/or wire fraud, and that "all Defendants knew that such overt acts would take place." *Id.* ¶ 89.

Defendants argue that Plaintiff's conspiracy claim is defective because she has not alleged that the primary purpose of the alleged conspiracy was to injure Plaintiff. (Mem. Supp. Mot. Def.'s Dismiss Pl.'s Am. Compl. 21.) Defendants assert that Plaintiff has merely alleged that Defendants were pursuing their own business interests, which is not sufficient to constitute a conspiratorial motive. *Id.* Defendants further argue that Plaintiff has alleged no unlawful or tortious act against Defendants. *Id.*

In its February 7, 2006 order, the Court held that the complaint was sufficient to allege a legally cognizable claim for conspiracy under Tennessee law. In light of this finding, and the Court's present finding that Plaintiff has sufficiently alleged that Defendants were an essential party to the alleged fraudulent scheme, Defendants' argument is entirely unavailing. Accordingly, Defendants' motion to dismiss Plaintiff's conspiracy claims is denied.

### C. *Fair Housing Act*

■ Plaintiff claims that Defendants have violated the Fair Housing Act ("FHA") through a predatory lending scheme of fraudulent loan practices targeted at African Americans and African American neighborhoods designed to take away the victims' homes. (Second Am. Compl. ¶ 103.) Plaintiff specifically claims that Defendants discriminated against her in the terms and conditions of the mortgage loan and in the provision of services in connection therewith because she is African American. *Id.* ¶ 105. Plaintiff concludes that Defendants' actions are in violation of the FHA because they make "housing unavailable to African Americans by subjecting them to discriminatory terms and conditions on loans that they

neither want or need, thereby reducing their ability to use and enjoy housing." *Id.* ¶ 103.

Although Plaintiff does not specify in her complaint the portions of the FHA she relies on, Defendants identify 42 U.S.C. § 3605, which prohibits discrimination in residential real estate-related transactions, as the only arguably applicable provision of the FHA. (Mem. Supp. Mot. Def.'s Dismiss Pl.'s Am. Compl. 12.) They further assert that because Equity Title and its principals did not set the allegedly discriminatory terms and conditions of the loan they cannot be held liable under § 3605 of the FHA. *Id.*

Plaintiff argues that Defendants were an integral part of the predatory lending scheme that set up the terms and conditions of the loan. (Pl.'s Mem. Law Opp. Mot. Dismiss 23.) Plaintiff further argues that Defendants themselves determined the unreasonable and unearned fees charged to Plaintiff as part of the loan transaction. *Id* at 24.

The Court heard and rejected an almost identical argument by defendants Home Tech Services, Inc., Memphis Financial Services, Inc., and others. These defendants urged dismissal of Plaintiff's FHA claims on grounds that they had merely assisted in the loan process and had not set the terms of the loan. In its February 7, 2006 order (D.E.# 421), the Court denied dismissal of Plaintiff's FHA claim on grounds that Plaintiff had alleged "vastly more extensive participation than a mere third party who fills out forms."

Having found that Plaintiff has sufficiently alleged that Equity Title and its agent were members in a RICO enterprise, the Court must similarly conclude that Plaintiff has sufficiently alleged substantial participation in a scheme to discriminate in residential real estate related transactions in violation of § 3605 of the

FHA. Consequently, Defendants' motion to dismiss Plaintiff's FHA claims is denied.

### D. *Equal Credit Opportunity Act*

Plaintiff claims violations by Defendants of the Equal Credit Opportunity Act's ("ECOA") thirty-day notice provision, which requires creditors to give borrowers notice of "adverse actions," including denials and counteroffers. ECOA, 15 U.S.C. § 1691(d), provides, in pertinent part, that

> (1) Within thirty days ... after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application.
>
> (2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor....
>
> (6) *For purposes of this subsection, the term "adverse action" means* a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a *refusal to grant credit in substantially the amount or on substantially the terms requested.*

(emphasis added).

Plaintiff asserts that she specifically requested a small home improvement loan and was instead provided a large mortgage loan "with little or no benefit" to Plaintiff, and did not receive proper notification of the terms of credit provided as required under ECOA. (Second Am. Compl. ¶¶ 108, 110.) Plaintiff alleges that this constitutes a refusal to grant credit in substantially the terms requested, and she was therefore entitled to notice of adverse action. *Id.* at 109.

Defendants counter that ECOA provides for liability of lenders who fail to conform to the statute's requirements. (Mem. Supp. Mot. Def.'s Dismiss Pl.'s Am. Compl. 13.) They argue that since Defendants did

not make any loan or extend credit to Plaintiff, they cannot be held in violation of the notice requirements of the ECOA. *Id.*

The Court finds persuasive Defendants' argument that they are not directly liable under ECOA, since as a non-lender Equity Title does not fall within the statutes purview. However, as an alleged conspirator in a fraudulent scheme, Defendants are potentially derivatively liable for the actions taken by any of their co-conspirators "in carrying out their common design." *Dale v. Thomas H. Temple Co.,* 186 Tenn. 69, 208 S.W.2d 344, 354 (1948). In view of the central role of the alleged failure to give Plaintiff adequate notice under ECOA in the purported "bait and switch" scheme, the Court finds that Plaintiff's allegations are sufficient as to the present Defendants. Accordingly, Defendants' motion to dismiss Plaintiff's ECOA claims is denied.

### E. *Truth–in–Lending Act*

Plaintiff claims that defendants MFS/Worldwide, Home Tech, and Novastar violated the Consumer Credit Protection Act or Truth–In–Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.,* by failing to provide information to the borrower, by providing contradictory and confusing information to the borrower, and by failing to provide a correct itemization of the amount financed and the total monthly payments due. (Second Am. Compl. ¶ 111.)

■ As they did with regard to the ECOA claims, Defendants argue that the duties under TILA rest with lenders and creditors only, and therefore they cannot be found liable. Again, the Court finds Defendant's argument to be well-taken as to an absence of direct liability under TILA. However, as alleged co-conspirators

Defendants remain potentially derivatively liable. Accordingly, Defendants' motion to dismiss Plaintiff's TILA claims as to Equity Title and Steven Winkel is denied.[4]

### F. *RESPA*

Plaintiff claims that Defendants have violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2604(c) and 2607. (Second Am. Compl. ¶¶ 120–21.) Specifically, Plaintiff alleges that Defendants failed to provide Plaintiff with a proper "Good Faith Estimate" of the amount or range of settlement charges prior to closing, in violation of § 2604(c). *Id.* ¶ 121. Plaintiff further alleges that Defendants charged excessive or unearned fees, prepared fraudulent HUD–1 Settlement Statements, and payed or received referral fees, kickbacks, and split fees, in violation of § 2607(a) and (b). *Id.*

Defendants contend that Plaintiff's claims raised pursuant to 12 U.S.C. §§ 2604(c) and 2607 of RESPA should be dismissed because 1) Carr's action is barred by the one year statute of limitations provided in 12 U.S.C. § 2614; 2) because § 2604(c) does not provide a private damages remedy; and 3) because Equity Title is not a creditor of the Plaintiff. The Court will address the statute of limitations issue first.

■ Federal statutes of limitation like those under RESPA are subject to the equitable tolling doctrine. In *Young v. U.S.,* Justice Scalia, writing for a unanimous Court stated, "[i]t is hornbook law that limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute. Congress must be presumed to draft limitations periods in light

---

4. Defendant also asserts that Plaintiff's TILA claim is time-barred pursuant to 15 U.S.C. § 1640(e). The Court has determined that the statutes of limitations for both the TILA and RESPA claims should be equitably tolled. The Court's reasons for such tolling are developed at length in the RESPA analysis which follows.

of this background principle." 535 U.S. 43, 49, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002) (citations omitted). In *Jones v. TransOhio Sav. Assoc.*, 747 F.2d 1037, 1042 (6th Cir.1984) the Sixth Circuit addressed the issue of equitable tolling. The *Jones* Court stated that, "the basic inquiry is whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances." *Id.* at 1040 (quoting *Burnett v. New York Cent. R.R.*, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965)). In Carr's case, the doctrine of equitable tolling is particularly appropriate. In addition to discrepancies on her HUD–1 Settlement Statements, Plaintiff also alleges that she never received copies of the Notice of the Right to Cancel. Am. Compl. ¶¶ 42–45, 48. The very purpose of TILA and RESPA documents is to "protect the consumer from divergent and at times fraudulent practices stemming from the uninformed use of credit" and "protect[ ] [consumers] from unnecessarily high settlement charges and certain abusive practices that have developed in some areas of the country." 15 U.S.C. § 1601; 12 U.S.C. § 2601. Ms. Carr asserts that the failure of Defendants and their alleged co-conspirators to adequately furnish Carr with the relevant documents and disclose the terms of the loan impeded her ability to discover Defendants' fraudulent misrepresentations and omissions. In light of the purpose of RESPA and the circumstances of Carr's case, this Court holds that the statute of limitations is tolled as required by *Jones.*

■ Defendants also argue that Plaintiff's § 2604 claim is barred because § 2604 does not provide a private right of action. Title 12, section 2604(c) of the United States Code provides that "[e]ach lender shall include . . . a good faith estimate of the amount or range of charges for specific settlement services the borrower is likely to incur in connection with the

settlement as prescribed by the Secretary." 12 U.S.C. § 2604(c).

The Court of Appeals for the Eleventh Circuit has held that no implied private right of action exists for violations of § 2604(c). *Collins v. FMHA–USDA,* 105 F.3d 1366, 1367–68 (11th Cir.1997). In so ruling, the *Collins* Court reasoned that § 2604(c) replaced the prior § 2605, which explicitly provided for an action for damages for its violations, and that other provisions of RESPA explicitly provide civil remedies. *Id.* at 1368. The court concluded that "there is no private civil action for a violation of 12 U.S.C. § 2604(c), or any regulations relating to it" because no evidence exists to establish that Congress intended to create a private right of action, which is one of the prerequisites to finding an implied right of action under *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). *Id.* at 1368. Plaintiff does not argue that the holding in *Collins* is incorrect. Moreover, the Court finds that the reasoning in *Collins* is persuasive and, as such, holds that no private right of action exists for violations of § 2604(c). Accordingly, Defendants' motion to dismiss Plaintiff's claim for violation of 12 U.S.C. § 2604(c) is granted.

■ Defendants next assert that Plaintiff's claim for violation of 12 U.S.C. § 2607(b) should be dismissed. Section 2607(b) provides that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b). Defendants assert that the complaint fails to allege that Equity Title or Winkel were creditors of Plaintiff's loan. However, § 2607 not only applies to creditors, but also applies to any person who gave or received "kickbacks" or split ex-

cessive or unearned fees with a third party. In this case, Plaintiff alleges that Defendants engaged in a scheme to divide a substantial amount of Plaintiff's proceeds amongst themselves for services they did not perform and inflated fees to excessive amounts. Accordingly, the Court finds that the complaint states a valid claim under 12 U.S.C. § 2607.

### G. *Fraud*

Plaintiff alleges that in carrying out the alleged predatory lending scheme, "all Defendants made false representations of existing or past material facts; that such false representations were made knowingly, without belief in their truth, or recklessly; and that Plaintiff reasonably relied upon them and thereby suffered damages as a result of such reliance." (Second Am. Compl. ¶ 124.) Plaintiff specifically alleges that "Equity Title made false representations through the fraud in the Settlement Statements and by charging the Plaintiff for work that was never done." *Id.* Defendants counter that Plaintiff "has failed to identify any false representations by *these Defendants* of specific past or present material facts upon which they relied to their detriment." (Mem. Supp. Mot. Def.'s Dismiss Pl.'s Am. Compl. 14–15.) Since fraud must be pled with particularity, Defendants assert, Plaintiff's general allegations are insufficient. *Id.* at 15.

▇ Under Tennessee law, to establish a claim for fraud, the plaintiff must show (1) an intentional misrepresentation with regard to a material fact, (2) knowledge of the representation['s] falsity—that the representation was made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity, (3) that the plaintiff reasonably relied on the misrepresentation and suffered damage, and (4) that the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, then the misrepresentation must "embody a promise of future action without the present intention to carry out the promise."

*Shahrdar v. Global Housing, Inc.*, 983 S.W.2d 230, 237 (Tenn.Ct.App.1998) (quoting *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn.Ct.App.1990)). Although the Federal Rules of Civil Procedure require a plaintiff to plead fraud with particularity, in ruling upon a motion to dismiss pursuant to Fed.R.Civ.P. 9(b), a court must consider the policy of simplicity in pleading embodied in Rule 8. *Michaels Bldg. Co.*, 848 F.2d at 679.

▇ The Court's inquiry as to these Defendants must focus upon the settlement statement prepared by Equity Title, since this is apparently the only communication Defendants had with Plaintiff. Plaintiff catalogs a number of misrepresentations allegedly contained in the settlement statement, including misstatements as to the place of settlement, unearned fees paid to Equity Title, a fee for an unperformed appraisal, and misstatements as to the distribution of loan proceeds. (Second Am. Compl. 29, 48, 51, 54.)

The Court finds that Plaintiff has pled with sufficient particularity allegations of intentional material representation of existing or past fact. The more difficult question, however, is the issue of detrimental reliance. Plaintiff asserts that she refinanced the property in reliance on the alleged misrepresentations to her detriment. *Id.* ¶ 125. Plaintiff also claims that had she known the truth about the terms of the loan and repairs, she would not have entered into the agreement. *Id.* ¶ 126.

With regard to the lesser alleged misrepresentations, such as place of settlement, the Court is unconvinced that Plaintiff can validly claim injury. However, the more serious allegations, might well, if

proven, serve to establish the elements of fraud. Consequently, Defendants' motion to dismiss Plaintiff's fraud claims is denied.

### H. *Conversion*

Plaintiff claims that "each Defendant unlawfully took and/or converted to his/her/its own use certain property, to wit: loan proceeds on the subject property and fees from the loan." *Id.* ¶ 149. Defendant responds that receipt of fees, even if arguably unreasonable, does not constitute conversion.

▮▮▮ To establish a claim for conversion under Tennessee law, a plaintiff must show that the defendant has "1) appropriated something belonging to the plaintiff to its own use and benefit, 2) by the exercise of dominion over it, 3) in defiance of the plaintiff's right." *Mammoth Cave Credit Ass'n v. Oldham,* 569 S.W.2d 833, 836 (Tenn.Ct.App.1977) (internal quotations and citations omitted). Although Equity Title validly argues that it did not take or convert any of the loan proceeds itself, Plaintiff avers that Defendants were knowing participants in a conspiracy to defraud her and take her property. (Second Am. Compl. ¶¶ 109–10.) Even if Equity Title did not itself convert any funds from the loan proceeds, it can still be held liable for the other defendants' actions under coconspirator liability if it was a participant in a scheme to defraud Plaintiff.

In its February 7 order, the Court held that Plaintiff sufficiently alleged a cause of action in conversion. Having also found that Plaintiff has sufficiently alleged Defendants' role in a conspiracy of which the alleged conversion was an integral part, the Court must further find that Plaintiff's conversion allegations are sufficient as to the present Defendants. Accordingly, Defendants' motion to dismiss Plaintiff's conversion claims is denied.

### I. *Negligent Misrepresentation*

Plaintiff alleges that Defendants breached a duty of care to Plaintiff by omitting or misrepresenting material information resulting in Plaintiff's injury. Defendants claim the Plaintiff has not identified any representation made by them upon which she justifiably relied. Defendants further maintain that Tennessee law does not provide a cause of action for negligent misrepresentation where there was only an omission in supplying information.

The Court has previously found, in its discussion on fraud, that Plaintiff has sufficiently alleged that Defendants made material misrepresentations which arguably resulted in reliance and injury to Plaintiff. Having found that Plaintiff has sufficiently alleged Defendants' role in a conspiracy of which the alleged negligent misrepresentation was an integral part, the Court must further find Plaintiff's negligent misrepresentation allegations are sufficient as to the present Defendants. Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's claim for negligent misrepresentation.

### J. *Breach of Contract*

Plaintiff alleges that all Defendants had contractual relationships with Plaintiff, either directly or implicitly and that Defendants breached such contracts to Plaintiff's detriment. (Second Am. Compl. ¶ 133.) Specifically, Plaintiff claims that there was an implicit contract between Plaintiff and Equity Title when Plaintiff paid Equity Title an attorney fee. *Id.* Plaintiff does not specify the manner in which this "implicit contract" was breached. Defendants assert that Plaintiff has not sufficiently alleged the existence of a contract. (Mem. Supp. Mot. Def.'s Dismiss Pl.'s Am. Compl. 18.)

Despite Plaintiff's allegations, the Court cannot identify the existence of any con-

tract between Defendants and Plaintiff. Likewise, the Court cannot identify in the record the breach of any existing contract. Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's claim for breach of contract, without legal prejudice.

### K. *Breach of Fiduciary Duty*

Plaintiff claims that by undertaking the tasks involved in Plaintiff's financing, Defendants created an agent-principal relationship and thus owed Plaintiff a fiduciary duty. (Second Am. Compl. ¶ 94.) Specifically, Plaintiff claims that "Defendants had a fiduciary duty to put the interests of the Plaintiff, their principal, above their own," and that Defendants breached that fiduciary duty. *Id.* ¶ 98–99. Defendants argue that there was no fiduciary duty between them and Plaintiff, and Plaintiff "has not alleged that she placed any trust or confidence in Equity Title". (Mem. Supp. Mot. Def.'s Dismiss Pl.'s Am. Compl. 18.)

■ However, Plaintiff alleges that Mr. Winkel served and was paid as their closing attorney and as employee of Equity Title prepared the necessary closing documents and settlement statements for their purchase.[5] As such, Winkel was both an agent and a fiduciary for Plaintiff. *See Alexander v. Inman,* 974 S.W.2d 689, 693–94 (Tenn.1998). The level of an attorney's duty of good faith towards his client "is significantly higher than that required in other business transactions where the parties are dealing at arm's length." Consequently, Defendants' motion to dismiss Plaintiff's breach of duty claim is denied.

### L. *Tennessee Consumer Protection Act*

Plaintiff alleges fraudulent and/or deceptive business practices and transactions in violation of the Tennessee Consumer Protection Act. (Second Am. Compl. ¶ 122.) Defendant asserts that Plaintiff has failed to allege any tortious act to which Plaintiff was exposed. Defendants further maintain that Plaintiff's claim is barred by the one-year statute of limitations provided in Tenn.Code Ann. § 47–18–110. (Mem. Supp. Mot. Def.'s Dismiss Pl.'s Am. Compl. 19.)

The Court finds Defendants' first assertion unavailing. Plaintiff has sufficiently alleged numerous tortious acts for which Defendants are potentially directly or derivatively liable, including fraud, conversion and negligent misrepresentation.

As to Defendants' statutory limitations assertion, Tenn.Code Ann. § 47–18–110 provides that .

> Any action commenced pursuant to § 47–18–109 shall be brought within one (1) year from a person's discovery of the unlawful act or practice, but in no event shall an action under § 47–18–109 be brought more than five (5) years after the date of the consumer transaction giving rise to the claim for relief.

Tenn.Code Ann. § 47–18–109 is the provision of the TCPA providing for private cause of action for unfair or deceptive acts or practices. Although not specifically mentioned in the complaint, it is the provision under which Plaintiff presumably makes her TCPA claim.

Plaintiff has not responded to Defendants' assertion that the statute of limitation precludes this claim. While there is some ambiguity as to the exact date of the transaction at issue, it is clear that Plaintiff's complaint was filed outside of the

---

5. Equity Title may be vicariously liable for Winkel's actions because Plaintiff alleges that Equity Title employs Winkel. For the purposes of this order, the Court will not attempt to parse the potential liability among the two moving defendants.

period allowed under the one-year statute of limitations. Plaintiff has presented no argument as to why the TCPA statute of limitations should be tolled. Accordingly, Defendants' motion to dismiss Plaintiff's claims of TCPA violations under Tenn. Code Ann. § 47–18–109 is granted, without legal prejudice to Plaintiff.

### M. *Unconscionability*

Plaintiff argues that her contract with Economic Advantages for bi-monthly mortgage payments was unconscionable and therefore the Court should void the contract or modify it to avoid unconscionable result. The Court has found no identifiable contract between Defendants Equity Title and Steven Winkel and Plaintiff and therefore grants Defendants motion to dismiss Plaintiff's claim for unconscionability.

### IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's claims for violation of 12 U.S.C. §§ 2604(c) (RESPA) and Tenn.Code Ann. § 47–18–109 (TCPA). The Court also **GRANTS** Defendants' motion to dismiss Plaintiff's state law claims of breach of contract and unconscionability. The Court **DENIES** Defendants' motion to dismiss Plaintiff's claims for violations of 18 U.S.C. § 1962(c) (RICO); § 1962(d) (RICO Conspiracy); 42 U.S.C. § 3605(FHA); 15 U.S.C. § 1691(d) (ECOA); 15 U.S.C. §§ 1635 and 1639 (TILA); and 2607 (RESPA). Likewise, the court **DENIES** Defendants' motion to dismiss Plaintiff's state law claims of civil conspiracy, fraud, conversion, negligent misrepresentation and breach of fiduciary duty.

**IT IS SO ORDERED** this 6th day of March, 2007.